**CONSOLIDATION COAL COMPANY, et al., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**Rapoca Energy Company, Plaintiff,**

v.

**The United States, Defendant.**

**No. 01–254C, 01–442C.**

United States Court of Federal Claims.

Aug. 14, 2002.

tiffs' property under the Fifth Amendment. Defendant counters that this court lacks jurisdiction to entertain plaintiffs' challenge to the regulatory scheme and even if it had jurisdiction, the challenge is untimely. In addition, defendant states that the reclamation fee is imposed pursuant to Congress' commerce power and therefore does not implicate the Export Clause. Finally, defendant argues that even if the reclamation did violate the Export Clause, plaintiffs would not have a compensable takings claim because the action on the part of the government would be considered unauthorized for purposes of takings law.

Steven Harlan Becker, New York City, attorney of record for plaintiff Consolidation Coal Company, et al. and Paul A. Horowitz and Charles H. Critchlow, of counsel, New York City.

John Y. Merrell, Jr., McLean, Virginia, attorney of record for plaintiff Rapoca Energy Company and John Y. Merrell, of counsel.

Michael M. Duclos, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Robert D. McCallum, Jr., for defendant. David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director.

## *OPINION*

FUTEY, Judge.

This Fifth Amendment takings case comes before the court on defendant's motion to dismiss and plaintiffs' motion for summary judgment. Plaintiffs are producers, sellers and exporters of coal. Pursuant to 30 U.S.C. § 1232 (2000) and 30 C.F.R. § 870.12 (2001), plaintiffs have paid a reclamation fee on coal which they have extracted from mines in the United States and which is then sold for export. Plaintiffs' argue that payment of this reclamation fee amounts to a tax on exports and is therefore in violation of the Export Clause of the United States Constitution which prohibits any tax or duty on exports during the course of exportation. Furthermore, plaintiffs contend that the unconstitutional imposition of the reclamation fee results in a compensable taking of plain-

### Factual Background

In 1977, Congress enacted the Surface Mining Control and Reclamation Act (SMCRA) (presently codified at 30 U.S.C. §§ 1200–1328 (2000)) in order to protect the population and the environment from the possible negative side effects of surface coal mining. In order to accomplish this goal, Congress established the Abandoned Mine Reclamation Fund, a trust fund used for the purpose of restoring various natural resources that had been damaged due to mining. 30 U.S.C. § 1231(a). Congress determined that the burden for paying for the restoration of mining lands should be borne by the coal industry. 1977 U.S.C.C.A.N. 593, 668. SMCRA specifically states:

> All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be at a rate of 2 per centum of the value of the coal at the mine, or 10 cents per ton, whichever is less.

30 U.S.C. § 1232(a).

The Department of the Interior subsequently promulgated regulations implementing the SMCRA. The regulation that addresses the value of the coal states:

(b) The fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator. (1) The initial bona fide sale, transfer of ownership, or use shall be determined by the first transaction or use of the coal by the operator immediately after it is severed, or removed from the reclaimed coal refuse deposit.

30 C.F.R. § 870.12(b)(1).

Plaintiffs pay this reclamation fee on all coal that they mine. Some of that coal, they allege, is destined for export. Plaintiffs enter into contracts with foreign customers. Pursuant to those contracts, plaintiffs mine coal, after which the coal is moved to raw coal storage areas for temporary storage and then fed into a preparation plant where the coal is processed to comply with the foreign customers' requests. After the coal is processed, the coal is either loaded directly onto rail cars that will transport the coal to the export terminal, or the coal is stored temporarily while awaiting arrival of the rail cars. Some of the plaintiffs use trucks and or barges to transport the coal to the export terminal in lieu of rail cars, and some use all three methods of shipment. If plaintiffs' coal is transported to an export terminal that has storage facilities, the coal can be either moved directly onto the vessel, or stored temporarily before being placed on the vessel.

Plaintiffs do not use for their own consumption any of the coal that is loaded for shipment to the export terminal or foreign customer. All plaintiffs, except Pacific Coast Coal Company, make some export sales pursuant to contracts between themselves and third-party brokers who then contract with foreign customers. Regardless of whether plaintiffs contract directly with the foreign customers, or use an intermediary third party, plaintiffs state that after their coal is loaded onto rail cars, it is bound for the export terminal and is not diverted for domestic sale. Although the terms of the export sales contracts vary by foreign customer or broker, plaintiffs allege that title never

transfers before the processed coal is loaded onto the rail cars or trucks at the mine or loadout facility for transport to the export terminal. Plaintiffs argue, therefore, that the reclamation amounts to a tax on goods that are bound for export in violation of the United States Constitution. The Export Clause states, "No Tax or Duty shall be laid on Articles exported from any State." U.S. Const. art. I, § 9, cl. 5.

Plaintiffs filed their complaint on April 27, 2001. Defendant filed its motion to dismiss pursuant to RCFC 12(b)(1), lack of jurisdiction over subject matter, and 12(b)(4),[1] for failure to state a claim upon which relief can be granted, on August 15, 2001. Plaintiffs' Brief In Opposition To Defendant's Motion To Dismiss And In Support of Plaintiffs' Cross–Motion For Summary Judgment was filed on January 15, 2002. All briefing was completed on June 13, 2002.

### Discussion

The court will first address defendant's motion to dismiss. In ruling on a motion to dismiss for lack of jurisdiction under RCFC 12(b)(1), the court must accept as true the complaint's undisputed factual allegations and construe the facts in the light most favorable to plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); see also *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *Farmers Grain Co. v. United States*, 29 Fed.Cl. 684, 686 (1993). A plaintiff must make only a prima facie showing of jurisdictional facts through the submitted material in order to defeat a motion to dismiss. *Raymark Indus. v. United States*, 15 Cl.Ct. 334, 338 (1988) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir.1977)). If the undisputed facts reveal any possible basis on which the non-moving party might prevail, the court must deny the motion. *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683; see also *Lewis v. United States*, 32 Fed. Cl. 59, 62 (1994). If, however, the motion challenges the truth of the jurisdictional facts alleged in the complaint, the court may consider relevant evi-

---

1. It should be noted that pursuant to the change in the court's rules, as of May 1, 2002, a motion to dismiss for failure to state a claim upon which relief may be granted is now made pursuant to RCFC 12(b)(6) not 12(b)(4).

dence in order to resolve the factual dispute. *Rocovich v. United States,* 933 F.2d 991, 994 (Fed.Cir.1991); see also *Lewis,* 32 Fed.Cl. at 62.

Defendant has also brought a motion to dismiss pursuant to RCFC 12(b)(6), for failure to state a claim upon which relief may be granted. The court will grant such a motion only if it appears beyond a doubt that plaintiff has failed to allege facts sufficient to support his claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Mostowy v. United States,* 966 F.2d 668, 672 (Fed.Cir.1992). In ruling on an RCFC 12(b)(6) motion to dismiss, the court must accept as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed. Cir.1991)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue,* 663 F.2d 713, 723 (7th Cir.1981), aff'd, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). "[L]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." *Blaze Constr., Inc. v. United States,* 27 Fed.Cl. 646, 650 (1993) (internal quotations omitted).

Defendant argues that the court lacks jurisdiction over this claim because plaintiffs are challenging the regulation promulgated by the Department of the Interior. Defendant contends that, therefore, any review of plaintiffs' claim falls within the exclusive jurisdiction of the United States District Court of the District of Columbia (D.C. District Court). In support of its argument, defendant cites SMCRA, which states:

> Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit .... A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.

30 U.S.C. § 1276(a)(1).

Plaintiffs make two main arguments in support of their contention that the court has jurisdiction over their claims. First, plaintiffs argue that if the court does not accept jurisdiction, they, and other plaintiffs similarly situated, would be precluded from ever raising a constitutional challenge to the implementation of the regulation. According to plaintiffs, defendant's interpretation of section 1276(a)(1) would "result[ ] in the absurdity that companies that were not even in existence when the regulation was adopted would be time-barred from raising this constitutional claim because they did not participate in the rulemaking process." [2]

Secondly, plaintiffs argue that they are not challenging the regulation itself, but are instead challenging the agency's application of the regulation. According to plaintiffs, it is the application of the regulation that is in violation of the Export Clause of the Constitution, not the regulation *per se.* Plaintiffs contend that the regulation would not have to be changed if it were found to violate the Constitution because the agency could, by issuing an internal notice, simply begin treating export sales as nontaxable sales.

Plaintiffs' first argument is unavailing. The reasoning underlying the argument that barring their constitutional challenge now would be "absurd," is not supported by the law. Defendant correctly points out that constitutional claims can be time barred just like any other claim. *Block v. North Dakota,* 461 U.S. 273, 292, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). Plaintiffs next argue that neither they, nor the companies in existence at the time of the promulgation of the regulation, could have foreseen that the tax would be

2. Plaintiffs' Cross–Motion For Summary Judg-    ment at 9.

imposed on exports. Defendant replies, again correctly, that the regulation was clear at the time of its enactment. It stated that the fee would be assessed at the time of initial bona fide sale, and made no exception for coal that was bound for export. 30 C.F.R. § 837.12 (1978).[3] In that regard, the regulation has not changed since its issuance. In fact, Congress specifically carved out exceptions to the tax, but coal bound for export was not one of those exceptions. 30 C.F.R. § 837.11 (1978). Coal producers could have and should have foreseen, therefore, that the fee would apply to all coal extracted, even coal that would eventually be sold for export.

In advancing their second main argument, plaintiffs rely heavily on *Arch Mineral Corp. v. Bruce Babbitt*, 104 F.3d 660 (1997), to support their claim that they are not challenging the regulation itself, but are instead challenging the implementation of the regulation by the Office of Surface Mining (OSM). In *Arch Mineral*, the United States Court of Appeals for the Fourth Circuit (Fourth Circuit) held that the United States District Court for the Southern District of West Virginia had jurisdiction to entertain an attack on OSM's implementation of a SMCRA regulation. In that case, OSM was imposing penalties on the plaintiff pursuant to OSM's ownership and control rule found in the SMCRA regulations. The plaintiff invoked a statute of limitations defense pursuant to a code section which imposed a five-year statute of limitations on agency enforcement actions. The defendant argued that only the D.C. District Court could hear such an attack on the SMCRA regulations. The plaintiff countered that it was not attacking the regulation *per se*, but simply stating that due to the statute of limitations, enough time had elapsed so OSM could not apply the rule to the plaintiff. The Fourth Circuit held that:

> Arch did not try to override existing regulatory language, read language into or out of a regulation. Rather, Arch simply sought a ruling on whether the five-year statute of limitations at 28 U.S.C. § 2462 applied to OSM's action .... Arch's invocation of the statute of limitations as an

affirmative defense suggests that the OSM regulations themselves are not the problem.

*Arch Mineral*, 104 F.3d at 665. Furthermore, in holding that the United States District Court for the Southern District of West Virginia did, in fact, have jurisdiction to review plaintiffs' challenge to OSM's enforcement proceeding, the Fourth Circuit stated that, "[a]pplications of the statute of limitations by other district courts does not require content evaluation of the regulations and does not present a threat to continuity of regulatory enforcement." *Id.*

Plaintiffs also refer the court to the recent actions taken by the Internal Revenue Service (IRS) in connection with the Black Lung Excise Tax. In *Ranger Fuel Corporation v. United States*, 33 F.Supp.2d 466 (E.D.Va. 1998), the United States District Court for the Eastern District of Virginia held that section 4121 of the Internal Revenue Code, 26 U.S.C. § 4121, which imposed an excise tax on all coal, violated the Export Clause of the Constitution when it was applied to coal that was sold for export. This particular tax had been enacted to finance the Black Lung Disability Trust Fund. The case does not address the jurisdictional issue raised by defendant. Plaintiffs argue, however, that it is instructive as an example of how an agency can change its actions with respect to the taxation of exported coal, but not have to change the actual wording of a statute. Plaintiffs argue that in the case of the Black Lung Excise Tax, the IRS simply issued an internal notice, IRS Notice 2000–28, 2000 WL 655005, that explained its new policy exempting coal sold for export. Plaintiffs argue that the IRS did not amend its regulation and therefore, OSM could do the same thing in the present case.

In response to plaintiffs' arguments, defendant cites *Amerikohl Mining, Inc. v. United States*, 899 F.2d 1210 (Fed.Cir.1990). In the *Amerikohl* case, plaintiffs challenged an assessment of reclamation fees under 30 U.S.C. § 1232(a) and 30 C.F.R. § 870.12(b). The

---

3. The numbering of the regulation was changed in October of 1978. At that time, 30 C.F.R. § 837 was changed to 30 C.F.R. § 870, but the substance of the regulation was not changed. 43 Fed.Reg. 49940 (October 25, 1978).

*Amerikohl* plaintiffs sought reimbursement for fees paid to the government under regulations in effect prior to 1988 that did not allow for the deduction of impurities in the coal when weighing the coal to determine the amount of the fee assessed. In other words, plaintiffs argued that, in essence, the government had been taxing substances other than coal, e.g., the impurities attached to it, and that, they argued, was beyond the authority of the Secretary of the Interior to tax.

In upholding the decision of the United States Court of Federal Claims in *Amerikohl*, the United States Court of Appeals for the Federal Circuit (Federal Circuit) stated, "[t]he only issue is whether the District Court for the District of Columbia has exclusive jurisdiction to hear challenges to rules and regulations promulgated under the SMCRA." *Amerikohl Mining, Inc.*, 899 F.2d at 1212. The plaintiff in that case attempted to draw a distinction between preenforcement proceedings and enforcement proceedings. The plaintiff explained that Congress could not have intended § 1276(a)(1) to mean that the D.C. District Court has exclusive jurisdiction over the review of challenges to the validity of the SMCRA provisions because that would bar claims initiated by parties who had not participated in the administrative proceedings. According to the *Amerikohl* plaintiffs, preenforcement proceedings were those initial administrative proceedings in which parties could participate. In contrast, plaintiffs defined enforcement proceedings as proceedings involving parties, like themselves, who could not have participated in the original administrative process, but who were later affected by the enforcement of the regulation.

The plaintiffs in *Amerikohl*, therefore, employed the same reasoning as plaintiffs use here. The Federal Circuit rejected this argument, stating:

the alleged distinction between "pre-enforcement and enforcement" proceedings cannot be found by reading the plain language of section 1276(a)(1), nor is the distinction suggested by legislative history. In fact, such a distinction, which permits a suit challenging the SMCRA to be brought in any court, at any time, by any aggrieved party is contrary to legislative intent.

*Id.* at 1214. Citing legislative intent the court said:

30 U.S.C. § 1276(a)(1) (1982), and not 28 U.S.C. § 1491 (1982) or 5 U.S.C. § 703 (1988), creates the right of judicial review of regulations promulgated under SMCRA .... Where "Congress specifically designates a forum for judicial review of administrative action, such a forum is exclusive, and this result does not depend on the use of the word 'exclusive' in the statute providing for a forum for judicial review."

*Id.* at 1215 (citing *Getty Oil Co. v. Ruckelshaus*, 467 F.2d 349, 356 (3rd Cir.1972), *cert. denied*, 409 U.S. 1125, 93 S.Ct. 937, 35 L.Ed.2d 256 (1973)) (internal citations omitted). Thus the Federal Circuit determined, "regardless of how Amerikohl characterizes the present action, Amerikohl is precluded from challenging the validity of regulations promulgated under section 1276(a)(1) because it is in the wrong court and because it did not participate in the administrative proceedings." *Id.*

The United States Court of Federal Claims is bound by rulings of the Federal Circuit. Although plaintiffs repeatedly insist that they are not challenging the substance of the regulation, but instead, the application of it, the court is not persuaded. The court interprets the issue in this case to be analogous to the issue faced by the Federal Circuit in *Amerikohl*. Plaintiffs' argument based on *Arch Mineral* is unavailing. A challenge based on a statute of limitations defense, such as the challenge made by plaintiff in *Arch Mineral*, is not akin to the challenge made here by plaintiffs. Plaintiffs here are challenging the substance of the regulation.

Similarly, plaintiffs' arguments based on *Ranger Fuel* are also unpersuasive. They argue that the regulations themselves would not have to be altered substantively in order to stop the enforcement of the regulations to coal bound for export, instead, they aver, the agency could simply alter its actions based on an internal notice or memorandum. The court views that as a distinction without a difference. According to the regulation as

written, all coal is weighed at the time of sale and taxed. No exception is made for coal bound for export. Language would have to either be read into or out of the current regulations to carve out an exception for the application of the regulations to coal that is bound for export.

Congress specifically reserved the review of this type of challenge to these regulations for the United States District Court for the District of Columbia. As the Federal Circuit observed in *Amerikohl,* plaintiff "may still attempt to obtain the requested refund by petitioning the Director of the Office of Surface Mining Reclamation and Enforcement ('Director') under 30 U.S.C. § 1211(g)(1982) to amend or repeal the ... regulation ...." *Amerikohl,* 899 F.2d at 1215.

This case is being dismissed for lack of subject matter jurisdiction, and therefore the court will not address the other substantive issues presented by plaintiffs.

### Conclusion

For the above-stated reasons, Defendant's Motion to Dismiss is GRANTED. Plaintiffs' Cross–Motion For Summary Judgment is DENIED. The Clerk is directed to dismiss the complaint. No costs.

IT IS SO ORDERED.