351 F.3d 1374
 CONSOLIDATION COAL COMPANY, Consol Of Pennsylvania Coal Company, Consol Of Kentucky Inc., Eighty Four Mining Company, Helvetia Coal Company, Island Creek Coal Company, Kent Coal Mining Company, Keystone Coal Mining Corporation, Laurel Run Mining Company, McElroy Coal Company, Nineveh Coal Company, Quarto Mining Company, Eagle Energy, Inc., Elk Run Coal Company, Inc., Goals Coal Company, Green Valley Coal Company, Independence Coal Company, Inc., Knox Creek Coal Corporation, Marfork Coal Company, Inc., Martin County Coal Corporation, Peerless Eagle Coal Company, Performance Coal Company, Rawl Sales & Processing Company, Sidney Coal Company, Inc., Stone Mining Company, Apogee Coal Company, Arch Western Resources, LLC, Canyon Fuel Company, LLC, Catenary Coal Company, Coal-Mac, Inc., Dal-Tex Coal Corporation, Hobet Mining, Inc., Mingo Logan Coal Co., Kingston Resources, Inc., Paynter Branch Mining, Inc., Pioneer Fuel Corporation, Plateau Mining Corporation, Rag Cumberland Resources, L.P., Rag Emerald Resources, L.P., Twentymile Coal Company, Coastal Coal Company, LLC, Coastal Coal-West Virginia, LLC., Eastern Associated Coal Corporation, Evergreen Mining Company, Mid-Vol Leasing, Inc., Mountaineer Coal Development Company, Old Ben Coal Company, Shipyard River Coal Terminal Company, Riverside Energy, Inc., Virginia Crews Coal Company, Clintwood Elkhorn Mining Company, Gatliff Coal Company, Premier Elkhorn Coal Company, Perry County Coal Corporation, Glamorgan Coal Company, LLC, Terry Eagle L.P., Nicholas-Clay Land & Mineral, Inc., Nicholas-Clay Company, LLC, and Alex Resources, Inc., Genwal Resources, Inc., Jim Walter Resources, Inc., Pacific Coast Coal Company, Usibelli Coal Mine, Inc., Powder River Coal Company, West Ridge Resources, Inc., United States Steel Mining Company, LLC, and Covenant Coal Corporation, Plaintiffs-Appellants, and
Rapoca Energy Company, Plaintiff-Appellant,
v.
UNITED STATES, Defendant-Appellee.
 No. 03-5019.
 United States Court of Appeals, Federal Circuit.
 Decided December 11, 2003.
 
 COPYRIGHT MATERIAL OMITTED Paul A. Andrew Horowitz, Coudert Brothers LLP, of New York, NY, argued for plaintiffs-appellants Consolidation Coal Company, et al. With him on the brief were Steven H. Becker, Charles H. Critchlow, and Suzanne I. Offerman. On the brief for plaintiff-appellant Rapoca Energy Company, was John Y. Merrell, Jr., Merrell & Merrell, P.C., of McLean, VA.
 Luke P. Levasseur, Commercial Litigation Branch, Civil Division, Trial Attorney, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were David M. Cohen, Director; Paul G. Freeborne, Trial Attorney; and Jeanne E. Davidson, Deputy Director. Of counsel on the brief was John Smathers, Attorney, Solicitor's Office, United States Department of Interior, of Washington, DC.
 Before NEWMAN, BRYSON, and PROST, Circuit Judges.
 PROST, Circuit Judge.
 
 
 1
 Appellants (collectively "the coal producers") appeal from the decision of the United States Court of Federal Claims dismissing for lack of subject matter jurisdiction their complaints seeking damages in the amount of reclamation fees imposed and paid pursuant to the Surface Mining Control and Reclamations Act of 1977 (SMCRA). Consolidation Coal Co. v. United States, 54 Fed.Cl. 14 (2002). Because we conclude that the Court of Federal Claims possesses jurisdiction to hear the coal producers' complaints under the Tucker Act, we reverse and remand. We do not decide the issue of whether the Takings Clause provides an independent cause of action.
 
 BACKGROUND
 
 2
 In 1977, Congress enacted the SMCRA. 30 U.S.C. §§ 1201-1328 (2000). To promote the reclamation of mined lands, Congress established within the SMRCA the Abandoned Mine Reclamation Fund, a trust fund used for restoring various natural resources that had been damaged due to mining. Id. § 1231(a). Specifically, the SMCRA provides:
 
 
 3
 All operators of coal mining operations subject to the provisions of [the SMCRA] shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, except that the reclamation fee for lignite coal shall be a rate of 2 per centum of the value of the coal at the mine, or 10 cents per ton, whichever is less.
 
 
 4
 Id. § 1232(a). The Department of the Interior subsequently promulgated a "reclamation fee regulation," which imposes a fee "on each ton of coal produced for sale, transfer, or use." 30 C.F.R. § 870.12(a) (2003). Pursuant to this regulation, the reclamation fee "shall be determined by the weight and value [of the coal] at the time of initial bona fide sale, transfer or ownership, or use by the operator." Id. 870.12(b).
 
 
 5
 The coal producers are United States producers, sellers, and exporters of coal. Pursuant to the statutory and regulatory provisions cited above, they have made quarterly payments of reclamation fees on coal extracted from mines in the United States and then sold for export. In April 2001, they filed complaints in the Court of Federal Claims based on the Constitution's Export[1] and Takings Clauses seeking a refund of paid reclamation fees. Specifically, they alleged that the reclamation fee imposed under § 1232, with respect to coal sold for export, is a "tax" or duty prohibited by the Export Clause. They claimed, therefore, that as applied to export sales of the coal, the reclamation fee violates the Export and Takings Clauses of the Constitution.
 
 
 6
 The government moved to dismiss the coal producers' complaints arguing that the Court of Federal Claims lacks jurisdiction to entertain their challenge to the reclamation fee regulation. Specifically, the government argued that under 30 U.S.C. § 1276(a)(1) (2000),[2] such challenges are within the exclusive jurisdiction of the United States District Court for the District of Columbia ("D.C. District Court") and must be brought within sixty days of the challenged action.[3]
 
 
 7
 In granting the government's motion to dismiss, the Court of Federal Claims determined that the coal producers were challenging the substance of the regulation at issue, rather than its application. Relying on Amerikohl Mining, Inc. v. United States, 899 F.2d 1210 (Fed.Cir.1990), the court further concluded that pursuant to § 1276(a)(1), the D.C. District Court had exclusive jurisdiction to review such a challenge.
 
 
 8
 The coal producers appeal and we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
 
 DISCUSSION
 
 9
 "Whether a motion to dismiss for lack of jurisdiction has been properly granted is a question of law subject to complete and independent review on appeal." Gould, Inc. v. United States, 67 F.3d 925, 928 (Fed.Cir.1995). Such review is "sometimes referred to as `de novo' or `plenary' review." Medline Indus., Inc. v. United States, 62 F.3d 1407, 1409 (Fed.Cir. 1995).
 
 
 10
 On appeal, the coal producers raise two arguments. First, relying primarily on Cyprus Amax Coal Co. v. United States, 205 F.3d 1369 (Fed.Cir.2000), they argue that, irrespective of § 1276(a)(1), they may invoke Tucker Act jurisdiction in the Court of Federal Claims because the Export Clause provides them with an independent, self-executing cause of action for monetary damages. According to the coal producers, neither Congress nor relevant precedent precludes Tucker Act jurisdiction in cases such as theirs and, even if Congress had attempted to preclude jurisdiction, there would be a question as to the constitutionality of such action. Alternatively, the coal producers contend that we must reverse the trial court's decision because they are not challenging the validity of any regulation, but are rather challenging the application of the reclamation fee regulation to export sales of coal.[4]
 
 
 11
 The government responds with essentially three arguments. First, it makes a procedural argument that the coal producers cannot now argue that their constitutional challenge provides an independent self-executing cause of action under the Tucker Act because it was not raised below. Next, relying primarily on Amerikohl, and United States v. United States Shoe Corp., 523 U.S. 360, 118 S.Ct. 1290, 140 L.Ed.2d 453 (1998), the government argues that § 1276(a)(1) vests exclusive jurisdiction over the coal producers' challenge to the reclamation fee regulation in the D.C. District Court. Finally, the government insists that the coal producers are challenging the substance of the reclamation fee regulation, not its application.
 
 
 12
 We turn first to the government's procedural argument. "It is indeed the general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts. But this principle does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue." Nelson v. Adams USA, Inc., 529 U.S. 460, 469, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000). It is correct that the coal producers appear not to have directly advanced the self-executing argument below. They did, however, clearly put the government and the trial court on notice of the constitutional issues involved; specifically, that § 1276(a)(1) should not be applicable to their case because it would have the effect of precluding constitutional review based on the Export Clause. See Consolidation Coal Co., 54 Fed.Cl. at 17. Therefore, that they did not utilize the "independent self executing" terminology employed here and cite Cyprus, for a purpose other than the one asserted in the trial court is not dispositive. In addition, as the coal producers correctly note, under federal rules any court at any stage in the proceedings may address jurisdictional issues. Thus, even if the issue is not properly raised, this court sua sponte may consider all bases for the trial court's jurisdiction. See Broughton Lumber Co. v. Yeutter, 939 F.2d 1547, 1555 (Fed.Cir. 1991). Accordingly, we conclude that based on the circumstances of this case, the coal producers' jurisdictional argument with respect to their independent, self-executing constitutional claim can and should be considered.
 
 
 13
 We next turn to the issue at the crux of this appeal, namely whether the Court of Federal Claims possesses Tucker Act jurisdiction over the coal producers' constitutional challenge to the reclamation fee regulation, irrespective of § 1276(a)(1). The Tucker Act, which constitutes a waiver of sovereign immunity by the United States, provides as follows:
 
 
 14
 The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States....
 
 
 15
 28 U.S.C. § 1491(a)(1) (2000). To invoke jurisdiction under the Tucker Act, a party must base its cause of action on a complementary substantive right found in another source of federal law, such as the Constitution, federal statutes, or executive regulations. Cyprus, 205 F.3d at 1373. Moreover, that substantive right must be fairly interpreted as mandating compensation by the federal government for the damages sustained. Id.
 
 
 16
 In Cyprus, the plaintiffs filed an action in the Court of Federal Claims alleging that the Coal Sales Tax violates the Constitution's Export and Takings Clauses and seeking a refund of paid taxes. Id. at 1370. The issue was whether the Court of Federal Claims possessed jurisdiction over the plaintiffs' complaints despite the plaintiffs' failure to comply with the jurisdictional prerequisites of the tax refund statute.[5] Id. at 1373-74. We held that the Constitution's Export Clause is one of those substantive rights that allows for Tucker Act jurisdiction because its restriction on taxing power requires Congress to refund money obtained in contravention of the clause. Id. at 1373. We further held that a cause of action based on the Export Clause is self-executing and that a party can therefore recover payment of taxes based on the Export Clause independent of the tax refund statute. Id. at 1374.
 
 
 17
 The coal producers' cause of action in the present case is significantly similar to that one asserted in Cyprus. Their complaints allege that they are entitled to recover paid reclamation fees because the fee was an unconstitutional tax imposed on coal in the export stream in violation of the Export Clause. Therefore, as in Cyprus, we hold that the Export Clause provides the coal producers with an independent self-executing cause of action that allows for Tucker Act jurisdiction in the Court of Federal Claims.
 
 
 18
 The government submits that Amerikohl, as opposed to Cyprus, is the relevant precedent. The cause of action asserted in that case, however, is in our view distinguishable from the challenge raised here. In Amerikohl, plaintiffs sought a refund from the government for reclamation fees paid under the same regulation at issue in this case, because it does not provide for a deduction of materials such as excess moisture, debris, and clay.[6] 899 F.2d at 1212. The claim was based on the SMCRA itself, with the allegation that a regulation that did not account for the excess material "exceeded the Secretary's statutory authority." Id. In trying to circumvent the SMCRA's jurisdictional limitations, plaintiffs argued on appeal that under § 1276(a)(1), the D.C. District Court has exclusive jurisdiction over the review of pre-enforcement proceedings upon a timely petition by any person who participated in the administrative rulemaking process, but that other courts may consider the validity of SMCRA regulations in enforcement proceedings initiated by aggrieved parties who did not participate in the administrative proceedings. Id. at 1213. Recognizing that Congress wished to create with the SMCRA a uniform system of national standards, this court rejected plaintiffs' arguments and properly held that Congress intended the D.C. District Court to be the exclusive forum for challenging the promulgation of national rules and regulations under the SMCRA. Id. Importantly, the cause of action asserted in Amerikohl was not based on the Constitution or any federal law other than the SMCRA itself. In marked contrast, however, the coal producers' challenge in this case is based on the Export Clause, which provides an independent self-executing cause of action. See Cyprus, 205 F.3d at 1374.
 
 
 19
 The government also argues that the coal producers' characterization of their challenge to the reclamation fee regulation as a constitutional attack does not alter the specific and exclusive jurisdiction established in § 1276(a)(1). In support, the government relies on United States Shoe, 523 U.S. at 366 n. 3, 118 S.Ct. 1290, to argue that where a specific jurisdictional statute other than the Tucker Act governs, "it follows the Court of Federal Claims lacks jurisdiction over the challenge" under the general jurisdictional authority of the Tucker Act.
 
 
 20
 In United States Shoe, the Supreme Court confirmed that the Court of International Trade possessed exclusive jurisdiction over challenges to the Harbor Maintenance Tax ("HMT") under 28 U.S.C. § 1581(i) (2000), including controversies regarding the administration and enforcement of the HMT. 523 U.S. at 365-66 & n. 3, 118 S.Ct. 1290. This exclusive jurisdiction thus covered a refund suit alleging that the HMT is unconstitutional based on the Export Clause. Id. at 365, 118 S.Ct. 1290. The Supreme Court's decision was grounded in § 1581(i), which provides that the Court of International Trade has jurisdiction over "any civil action commenced against the United States... that arises out of any law of the United States providing for — (1) revenue from imports or tonnage." (emphases added).[7] Thus, in United States Shoe, the Supreme Court concluded that Congress explicitly reserved exclusive jurisdiction over challenges of the HMT to the Court of International Trade as evidenced by § 1518(i)(4). Id. at 366 & n. 3, 118 S.Ct. 1290. That decision is consistent with prior cases holding that whether a subsequently passed statute removes the Court of Federal Claims' jurisdiction over a constitutionally founded claim depends on whether Congress has in the relevant jurisdictional statute unambiguously withdrawn Tucker Act jurisdiction. Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 12, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990).
 
 
 21
 We do not agree with the government that § 1276(a)(1) provides for exclusive jurisdiction over all challenges to the reclamation fee regulation, including constitutional challenges. As the coal producers point out, there is no statement from Congress in § 1276(a)(1), or any other statute, indicating that it has unambiguously withdrawn Tucker Act jurisdiction over such challenges. The SMCRA states, in relevant part, "[a]ny action by the Secretary promulgating national rules or regulations [under the SMCRA] shall be subject to judicial review in the United States District Court for the District of Columbia Circuit," and that "[a] petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action ... by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary." Id. § 1276(a)(1). Thus, unlike the relevant jurisdictional statute in United States Shoe, 523 U.S. at 366, 118 S.Ct. 1290, § 1276(a)(1) makes no mention of the Tucker Act or suits against the government that "arise[ ] out of any law of the United States." See Preseault, 494 U.S. at 12, 110 S.Ct. 914 (stating that "[n]either the statute nor its legislative history mention[ed] the Tucker Act" was relevant in determining whether a jurisdictional statute had superseded the Tucker Act). Moreover, our holding in Amerikohl that § 1276(a)(1) "creates the right of judicial review of regulations promulgated under the SMCRA," is not commensurate with a determination that § 1276(1)(1) constitutes an unambiguous withdrawal of Tucker Act jurisdiction in the Court of Federal Claims. 899 F.2d at 1215; see Reg'l Rail Reorganization Act Cases, 419 U.S. 102, 133, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974) (stating that repeals of Tucker Act jurisdiction by implication are disfavored).
 
 
 22
 Because we conclude that the Court of Federal Claims has jurisdiction over the coal producers' complaints, we find it unnecessary to address the parties' remaining arguments with respect to this issue.
 
 
 23
 Accordingly, we reverse and remand for further proceedings.
 
 
 24
 
 REVERSED AND REMANDED.
 
 
 
 
 Notes:
 
 
 [1]
 The Export Clause states that "[n]o Tax or Duty shall be laid on Articles exported from any state." U.S. Const. art. I, § 9, cl. 5
 
 
 [2]
 This statutory provision reads in relevant part as follows:
 Any action by the Secretary promulgating national rules or regulations including standards pursuant to sections 1251, 1265, 1266, and 1273 of this title shall be subject to judicial review in the United States District Court for the District of Columbia Circuit.... A petition for review of any action subject to judicial review under this subsection shall be filed in the appropriate Court within sixty days from the date of such action, or after such date if the petition is based solely on grounds arising after the sixtieth day. Any such petition may be made by any person who participated in the administrative proceedings and who is aggrieved by the action of the Secretary.
 30 U.S.C. § 1276(a)(1).
 
 
 [3]
 The government also alleged that the coal producers failed to state a claim upon which relief may be granted. This portion of the government's motion to dismiss, however, is not before us because the trial court dismissed the coal producers' complaints on jurisdictional grounds
 
 
 [4]
 After oral argument, the coal producers moved for leave to file a supplemental submission addressing certain questions raised by the panel during argument. Specifically, they attempt to clarify that they are indeed challenging the statute imposing the reclamation fee as opposed to the implementing regulation. The government opposes the motion. We deny the motion because it belatedly raises arguments and issues not previously raised on appeal. Also, because we conclude that the Court of Federal Claims possesses jurisdiction over the regulatory challenge of their complaints, we find it unnecessary to resolve the question of whether the coal producers are also challenging the statutory imposition of the reclamation fee
 
 
 [5]
 This provision reads in relevant part as follows:
 No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary....
 26 U.S.C. § 7422(a) (2000).
 
 
 [6]
 The Secretary amended the regulation to allow for the deduction of the excess moisture from the gross weight of coal mined and sold after July 1, 1998, but the regulation was explicitly not made retroactiveAmerikohl, 899 F.2d at 1211-12. The dispute in the case was over fees paid in 1982. Id. at 1212.
 
 
 [7]
 The key directive was found in § 4462(f)(2), which instructs that for jurisdictional purposes, the HMT shall be treated as a customs duty and such duties, by their nature, provide for revenue from importsUnited States Shoe, 523 U.S. at 365-66, 118 S.Ct. 1290.