**CONSOLIDATION COAL COMPANY, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Peabody Holding Company, et al., Plaintiffs,**

v.

**The United States, Defendant.**

**Alex Energy, Inc., et al., Plaintiffs,**

v.

**The United States, Defendant.**

**Aracoma Coal Company, et al., Plaintiffs,**

v.

**The United States, Defendant.**

**Black Stallion Coal Company, LLC, et al., Plaintiffs,**

v.

**The United States, Defendant.**

**Consol Energy, Inc., Plaintiff,**

v.

**The United States, Defendant.**

Nos. 07–00266C, 05–01211C, 05–00929C, 09–00734C, 09–00770C, 05–01284C.

United States Court of Federal Claims.

Dec. 8, 2011.

See also, 615 F.3d 1378.

---

*ORDER*

BOHDAN A. FUTEY, Judge.

Before the Court is plaintiffs' motion to continue the stay in the above-captioned cases. The Court stayed these cases pend-

ing the outcome of *Consolidation Coal Co. v. United States,* No. 01–254 ("*Consolidation Coal I*").[1] That case has now been conclusively resolved by this Court, the Federal Circuit, and the Supreme Court, which denied a petition for a writ of certiorari on June 13, 2011.

Although these cases had been stayed pending *Consolidation Coal I,* plaintiffs now assert that the Court should continue the stay, despite resolution of that case. According to plaintiffs, a new case filed in federal district court may eventually be decided differently by the district court, the court of appeals, and the Supreme Court. If that occurs, plaintiffs claim that they may be prejudiced by the dismissal of these cases. Defendant, on the other hand, seeks to lift the stay and move for judgment, based upon the decision of the Federal Circuit in *Consolidation Coal I. See Consolidation Coal Co. v. United States,* 615 F.3d 1378 (Fed.Cir.2010).

I. *Background*

The facts of these cases have been extensively reviewed elsewhere. *See, e.g., Consolidation Coal Co. v. United States,* 351 F.3d 1374, 1376–78 (Fed.Cir.2003). Under the Surface Mining Control and Reclamations Act of 1977 ("SMCRA"), 30 U.S.C. §§ 1201–1238 (2006), a reclamation fee is used to fund the Abandoned Mine Reclamation Fund. *See id.* § 1232(a) (requiring payment of "a reclamation fee of 35 cents per ton of coal produced by surface mining").

Plaintiffs, a group of coal producers, sued in 2001 in the Court of Federal Claims and argued that the reclamation fee violates the Export Clause to the Constitution. For the next ten years, that case, *Consolidation Coal I,* proceeded before this Court, the Federal Circuit, and, on a petition for a writ of certiorari, the Supreme Court. Meanwhile, the cases relevant to the current motion were stayed as they were filed, pending the outcome of *Consolidation Coal I.*

The constitutionality of the challenged reclamation fee hinges on the breadth of its coverage. If the fee covers "coal extracted" alone, then the fee is constitutional. *Consolidation Coal Co. v. United States,* 528 F.3d 1344, 1347 (Fed.Cir.2008). If, however, it more broadly covers "the entire process of extracting and selling coal," then certain applications of the fee would be unconstitutional. *Id.* Relying on the canon of constitutional avoidance, the Federal Circuit found on June 11, 2008 that the statute at issue could reasonably be interpreted to cover only "coal extracted" and thus was constitutional. *Id.* at 1348. On remand, the coal producers argued that, even if the statute itself were constitutional, the regulations implementing the fee were not, but the Federal Circuit eventually held on August 2, 2010 that the "challenged regulations for collecting the reclamation fee under SMCRA, like the statute itself, apply to 'coal extracted' and do not violate the Export Clause." *Consolidation Coal Co. v. United States,* 615 F.3d 1378, 1382 (Fed.Cir.2010).

Plaintiffs sought on multiple occasions to overturn the panel decision of the Federal Circuit in *Consolidation Coal I.* On October 12, 2010, the full Federal Circuit denied a petition for a rehearing and rehearing *en banc,* and the Supreme Court denied a petition for a writ of certiorari on June 13, 2011.

As noted above, these cases were stayed pending the resolution of *Consolidation Coal I.* After the Supreme Court denied the petition for a writ of certiorari, plaintiffs moved on October 14, 2011 to continue the stay in these cases pending a new case filed in federal district court. In that case, *Coal River Energy LLC v. Ken Salazar, Secretary, & United States Department of the Interior,* No. 11–1648 (D.D.C. filed Sept. 13, 2011), plaintiffs expect that the trial court and appellate court "will rule" in favor of the coal producers and reach a different conclusion than the Federal Circuit in *Consolidation Coal I. See* Pls.' Mot. Continue Stay Proceedings 4, ECF No. 21. Plaintiffs therefore

---

1. This motion deals with two cases known as *Consolidation Coal Co. v. United States.* For clarity, the Court will refer to the first case, No. 01–254, as *Consolidation Coal I.* The second case, No. 07–266, which has been stayed while the first case was litigated, will be referred to as *Consolidation Coal II.* Additionally, all citations to court documents reference filings made in *Consolidation Coal II,* unless otherwise noted.

request that the Court continue the stay. Defendant filed an opposition on October 31, 2011, and plaintiffs filed a reply on November 7, 2011.

## II. *Discussion*

The parties disagree about essentially two matters related to the continuation of the stay. First, they propose different standards to guide the Court's analysis of whether to continue the stay. Second, whatever the standard, they disagree about the application of that standard to the facts.

### A. *The Standard for Considering an "Indefinite Stay" Applies to the Pending Motion.*

■ Both parties—and the Court—agree that the Court has the power to grant the pending motion. As the Supreme Court has noted, "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket." *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *see also Cherokee Nation of Okla. v. United States*, 124 F.3d 1413, 1416 (Fed.Cir. 1997) ("The power of a federal trial court to stay its proceedings, even for an indefinite period of time, is beyond question.").

■ Even though the Court has the power to further stay the cases, its discretion must control the use of that power, and the parties disagree as to what standards should guide that discretion. *Cherokee Nation*, 124 F.3d at 1416. While plaintiff uses the typical analysis for a stay pending appeal, *Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987), defendant asserts that the standard for granting an "indefinite stay" should govern. *Cherokee Nation*, 124 F.3d at 1414.

■ A stay pending appeal is a form of interim injunctive relief designed to "maintain the status quo pending a final determination of the merits of the suit." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C.Cir.1977). Before granting such a stay, a court must consider:

(1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton*, 481 U.S. at 776, 107 S.Ct. 2113. In one typical case, which plaintiffs have cited, a district court entered judgment and imposed an injunction against the appellant, who petitioned the Federal Circuit for a stay while the appeal of that judgment and injunction was ongoing. *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed.Cir.1990). The Federal Circuit found that "a stay pending disposition of this appeal" should be granted in order to protect the appellant's interests. *Id.* at 516.

Although plaintiffs urge the Court to use the analysis for a stay pending appeal, the procedural situation of this case differs markedly from cases in which a court has stayed judgment pending appeal. In *Standard Havens,* for instance, the Federal Circuit stayed judgment while it decided the merits of the appeal. 897 F.2d at 512. In this case, however, the Federal Circuit has *already* decided the merits of plaintiffs' appeal in *Consolidation Coal I,* and no judgment has yet been entered in the cases which were stayed. While a stay of judgment may be appropriate during the pendency of an appeal, there is no appeal currently pending. Instead, plaintiffs rely on a collateral attack, launched in another forum, against the binding decision of the Federal Circuit. That situation is factually distinct from those cases that have considered interim injunctive relief pending appeal, and the Court thus will not use plaintiffs' proposed standard.

■ Defendant's proposed standard, in contrast, deals with situations where a party seeks an "indefinite stay," rather than a stay pending appeal. *See Cherokee Nation,* 124 F.3d at 1414. The Federal Circuit has determined that, although a trial court has "the power ... to stay its proceedings, even for an indefinite period of time," such "discretion is not, however, without bounds." *Id.* at 1416. According to that court, "A stay so

extensive that it is 'immoderate or indefinite' may be an abuse of discretion." *Id.* (quoting *Landis,* 299 U.S. at 257, 57 S.Ct. 163). A court considering an indefinite stay "abuses its discretion by issuing 'a stay of indefinite duration in the absence of a pressing need' " and must " 'weigh competing interests and maintain an even balance.' " *Id.* (quoting *Landis,* 299 U.S. at 255, 57 S.Ct. 163). While conducting this balance, a court must keep in mind its "paramount obligation to exercise jurisdiction timely in cases properly before it." *Id.*

■ The standard for an "indefinite stay" more closely mirrors the situation before the Court. For instance, in *Cherokee Nation of Oklahoma v. United States,* a trial court "indefinitely stayed" proceedings of a case in order to allow the parties to pursue a quiet title action in a separate forum. 124 F.3d at 1414. After weighing the need for a stay and the costs to the party opposing the stay, the Federal Circuit found that a stay would be inappropriate when the quiet title action might "take years to complete" because "to stay the . . . suit pending these speculative and protracted events is to place the [party opposing the stay] effectively out of court." *Id.* at 1418. The Federal Circuit was further concerned that "[t]he trial court's refusal to exercise jurisdiction until completion of the protracted process of quieting title may effectively vitiate the court's 'virtually unflagging obligation . . . to exercise the jurisdiction given them' to decide controversies." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 14–15,

103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). The same concerns govern here, as plaintiffs ask the Court to continue the stay, while a case filed in a separate forum proceeds.

B. *Plaintiffs have not Shown a "Pressing Need" for a Continued, Indefinite Stay.*

As noted above, if a stay is indefinite, a movant must identify a "pressing need" for the stay. *Cherokee Nation,* 124 F.3d at 1416. The Court then weighs "competing interests" for and against a stay, while keeping in mind its obligation to timely exercise its jurisdiction. *Id.*

■ The stay sought by plaintiffs is clearly indefinite. Plaintiffs ask the Court to delay litigation of these cases while another case, *Coal River Energy LLC v. Ken Salazar, Secretary, & United States Department of the Interior,* No. 11–1648 (D.D.C. filed Sept. 13, 2011), proceeds before the United States District Court for the District of Columbia.[2] Plaintiffs believe that the district court will be forced to rule in favor of the coal producers based on the 1986 opinion of the Court of Appeals for the District of Columbia Circuit in *Drummond Coal Co. v. Hodel,* 796 F.2d 503 (D.C.Cir.1986). *See also Drummond Coal Co. v. Hodel,* 610 F.Supp. 1489 (D.D.C.1985) (decision of the trial court). Despite the fact that the Federal Circuit considered—and rejected—differences between *Consolidation Coal I* and *Drummond,* plaintiffs believe that, on appeal, the Court of Appeals for the District of Co-

---

2. The Court notes that litigation in these cases was stayed pending resolution of *Consolidation Coal I.* In consent motions to stay these cases, the parties specifically represented to the Court that the disposition of that lead case would control the dispositions of these ones. *See* Def.'s Consent Mot. Stay Proceedings at 2, *Consolidation Coal Co. v. United States,* No. 07–266 (July 30, 2007) ("A final decision (*i.e.,* from the Court of Appeals for the Federal Circuit or the Supreme Court) with respect to liability and any disputed damages issues in *Consolidation Coal I* will control the disposition of those issues in this case."); *see also* Def.'s Unopposed Mot. Stay Proceedings at 2, *Aracoma Energy, Inc. v. United States,* No. 09–734 (Dec. 28, 2009) (same); Def.'s Unopposed Mot. Stay Proceedings at 2, *Black Stallion Coal Co. LLC v. United States,* No. 09–770 (Jan. 11, 2010) (same); J. Mot. Stay Proceed-

ings at 1, *Alex Energy, Inc. v. United States,* No. 05–929 (Dec. 14, 2005) (same); Unopposed Mot. Stay Proceedings at 1, *Consol Energy, Inc. v. United States,* No. 05–1284 (Jan. 3, 2006) (same); Unopposed Mot. Stay Proceedings at 3, *Peabody Holding Co. v. United States,* No. 05–1211 (Jan. 3, 2006) (same). The Court is concerned that a ruling, which is unfavorable to the coal producers, in *Coal River Energy* will simply lead plaintiffs to find some new case in a new forum that will control the disposition of these cases and lead them to ask, again, for another indefinite stay. A stay without definite boundaries is precisely the kind of stay that the Federal Circuit was concerned with in *Cherokee Nation,* where it emphasized a court's "virtually unflagging obligation" to timely use its jurisdiction. 124 F.3d at 1418.

lumbia Circuit will affirm the district court based on *Drummond.* Then, piling assumption upon assumption, plaintiffs expect that the Supreme Court will grant a "prompt review" of the "significant circuit split" that will have been created by the conflicting appellate opinions. Pls.' Mot. Continue Stay Proceedings 4, ECF No. 21. Eventually, plaintiffs feel confident that the coal producers will prevail before the Supreme Court. At which point, finally, the cases relevant to this motion can be litigated. The Court finds that a stay would be indefinite when it is contingent upon the litigation of a district court case in another forum, a trial court decision in that forum, an appellate court decision, and discretionary review by the Supreme Court.

█ The need identified by plaintiffs is also not particularly pressing, since the weight of the need hinges on plaintiffs' assumption that the fee is unconstitutional, even though the Federal Circuit explicitly found otherwise. Without a stay, plaintiffs argue that they will not be able to obtain "refunds of the taxes that should never have been imposed" and that their "rights . . . under the Export Clause [should] be protected from unnecessary forfeiture in this Court while the merits of their claim are being litigated in the District of Columbia Circuit." Pls.' Mot. Continue Stay Proceedings 20–21, ECF No. 21. Plaintiffs analogize the need for a stay here to the need in a case in which a court stayed a takings action that could not be "maintained unless and until" a federal district court overturned an agency action. *Underwood Livestock, Inc. v. United States,* 79 Fed.Cl. 486, 498 (2007). In that case, however, the plaintiff's claims would have been dismissed before being heard without a stay, but, here, plaintiffs have already maintained and litigated their claims—quite extensively—before this Court and the Federal Circuit. Plaintiffs are, to be sure, unhappy with the decision of the Federal Circuit in *Consolidation Coal I,* but every suit carries with it the risk of loss. Staying litigation in order to let plaintiffs have a second bite at the apple does not establish a compelling need. Furthermore, once the stay is lifted, the parties will still need to litigate the motion for judgment that defendant expects to file in these cases.

The "competing interests" for and against a stay weigh in favor of actively litigating these actions. Plaintiffs argue that the "public interest" is served by "the protection of [Constitutional] rights" and that the public must be "assured that the Government is obeying . . . the Constitution," Pls.' Mot. Continue Stay Proceedings 22, ECF No. 21, but the Federal Circuit has already found the reclamation fee and regulations to be without Constitutional fault. *Consolidation Coal,* 615 F.3d at 1382. The public is thus assured that the Government is obeying its own laws. Furthermore, as defendant has noted, it has an interest in the active prosecution of cases so that, as time passes, defendant is not forced to litigate a case after memories have faded. The Court too has an interest in finality and resolving disputes on its docket, and plaintiffs essentially are seeking a chance to rehash arguments already made to an appellate court and to the Supreme Court, in the petition for a writ of certiorari.[3]

Finally, the Court would neglect its "paramount obligation to exercise jurisdiction timely" if it allowed an indefinite stay in this matter. *Cherokee Nation,* 124 F.3d at 1416. Previously, the Court stayed these cases while *Consolidation Coal I* was prosecuted

---

3. In fact, much of plaintiffs' brief in support of their motion to continue the stay is copied, more or less verbatim, from their petition for a rehearing *en banc* and their petition for a writ of certiorari. *Compare, e.g.,* Pls.' Mot. Continue Stay Proceedings 42, ECF No. 21 ("The 1937 *Liggett* decision is both doctrinally irrelevant and factually inapposite. The case concerned the doctrine of state immunity from federal taxation, not the Export Clause.") *with* Combined Pet. Panel Reh'g & Reh'g En Banc by Plaintiffs–Appellants at 9, *Consolidation Coal Co. v. United States,* 615 F.3d 1378 (Fed.Cir.2010) (No. 2009–

5083), 2010 WL 4021262 at *9 ("The 1937 *Liggett* decision is both doctrinally irrelevant and factually inapposite. The case concerned the doctrine of state immunity from federal taxation, not the Export Clause.") *with* Pet. Writ Certiorari at 19, *Consolidation Coal Co. v. United States,* —— U.S. ——, 131 S.Ct. 2990, 180 L.Ed.2d 821 (2011) (No. 10–1020), 2011 WL 515699 at *19 ("But that case is both doctrinally irrelevant and factually inapposite. *Liggett* concerned the principle of state immunity from federal taxation, which has no textual or structural relationship to the Export Clause.").

because that case presented "identical" liability issues. *See, e.g.,* Def.'s Consent Mot. Stay Proceedings 1, ECF No. 7. Staying active prosecution of these cases was appropriate to allow a decision to be reached in *Consolidation Coal I* and to prevent simultaneous litigation in separate suits of identical legal issues. *See, e.g., id.* 2 (representing that a "final decision" from the Federal Circuit or Supreme Court in *Consolidation Coal I* would "control the disposition" of the stayed cases with "indistinguishable legal issues"). Now, a decision has been reached. Delaying prosecution to allow for a collateral challenge to the decision of the Federal Circuit would be inappropriate, and the Court would lose its ability to ensure the timely litigation of issues in these cases. *See Freeman v. United States,* 83 Fed.Cl. 530, 533 (2008) (lifting a stay to allow for a timely exercise of jurisdiction).

### III. *Conclusion*

Allowing these cases to be further stayed would only promote an endless retreading of issues conclusively resolved by the Federal Circuit. Plaintiffs' motion is therefore DENIED. The stays in the above-captioned cases are lifted. Defendant shall file a motion for judgment by Tuesday, January 31, 2012; briefing shall proceed in accordance with the rules of the Court.

IT IS SO ORDERED.