# United States Court of Appeals for the Federal Circuit

04-1337

STEPHEN K. TERLEP,

Plaintiff-Appellant,

v.

THE BRINKMANN CORP.,
WAL-MART STORES, INC., and HOME DEPOT U.S.A., INC.,

Defendants-Appellees.

Nathan Price Chaney, Nolan Henry, PLLC, of Fayetteville, Arkansas, argued for plaintiff-appellant. With him on the brief were Mark Murphey Henry and James Aubrey Fussell.

Gary A. Clark, Sheppard, Mullin, Richter & Hampton LLP, of Los Angeles, California, argued for defendants-appellees. On the brief was Hermann Ivester, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., of Little Rock, Arkansas.
.
Appealed from: United States District Court for the Western District of Arkansas

Judge Harry F. Barnes

# United States Court of Appeals for the Federal Circuit

04-1337

STEPHEN K. TERLEP,

Plaintiff-Appellant,

v.

THE BRINKMANN CORP.,
WAL-MART STORES, INC., and HOME DEPOT U.S.A., INC.,

Defendant-Appellees.

_____

DECIDED: August 16, 2005

_____

Before BRYSON, GAJARSA, and LINN, Circuit Judges.

LINN, Circuit Judge.

Stephen K. Terlep ("Terlep") appeals from the decision of the United States District Court for the Western District of Arkansas ("district court") granting the motion of The Brinkmann Corp., Wal-Mart Stores, Inc., and Home Depot, U.S.A., Inc. (collectively, "Brinkmann") for summary judgment of non-infringement of U.S. Patent No. 5,594,433 ("the '433 patent"). Terlep v. Brinkmann Corp., No. 02-CV-5127 (W.D. Ark. Mar. 29, 2004) ("Order I"). Because the district court correctly construed the claim term "clear" and properly granted Brinkmann's motion for summary judgment of non-infringement, we affirm.

# I. BACKGROUND

The '433 patent relates to omni-directional light emitting diode ("LED") lamps. LEDs are a desirable substitute for traditional incandescent lamps because of their increased lifetime, higher resistance to shock and vibration, and lower cost of production. However, in contrast to an incandescent lamp, which emits light omni-directionally, the light from an LED is emitted in a forward cone of less than 90 degrees. The '433 patent is directed to the production of omni-directional light by reflecting the cone of light from an LED off a semi-spherical convex reflector.

Independent claim 1 recites, with the terms at issue underlined:

> 1. An omni-directional LED lamp useful for traffic control and warning devices that reflects light in a 360 degree circumferential direction without having to rotate any components, comprising:
>
> a first LED;
>
> a first <u>semi-spherical</u> reflector having a continuous convex reflective surface, the first semi-spherical reflector mounted <u>above</u> the first LED, wherein light from the first LED is reflected substantially in a 360 degree circumference rendering the first LED omni-directional; and
>
> a first <u>clear</u> plastic tubular holder for tightly holding the first semi-spherical reflector oriented <u>directly above</u> the first LED in a stationary non rotating position, wherein the first semi-spherical reflector reflects light in a 360 degree circumferential direction.

'433 patent, col. 6, ll. 13-28.

Claim 4 depends from claim 1 and recites that the "first semi-spherical reflector includes: a mirror finish deposited on a plastic shape." <u>Id.</u> at col. 6, ll. 57-59.

On November 28, 1997, Terlep filed suit against Brinkmann, alleging that Brinkmann's products infringed claims 1 and 4 of the '433 patent literally and under the doctrine of equivalents. The accused products are solar-powered lamps for pathway lighting. The lamps were sold through retailers Wal-Mart and Home Depot. These lamps use an LED and a convex reflector that is less than a full half sphere. Further, because they are used for pathway lighting, the relative orientation between the reflector and the LED when the product is in use is such that the reflector is located below the LED. Finally, the Brinkmann lights use a ribbed holder to align and position the reflector in front of the LED. Brinkmann denied infringement and filed a counterclaim alleging invalidity. The district court construed a number of disputed terms and, based on the claim construction, granted Brinkmann's motion for summary judgment of non-infringement and dismissed the claims with prejudice. Order I.

On April 14, 2004, Terlep filed a notice of appeal. Because the district court's initial order did not address Brinkmann's invalidity counterclaim, this court determined that it lacked jurisdiction and dismissed the appeal. Terlep v. Brinkmann Corp., 127 Fed. Appx. 498 (Fed. Cir. Mar. 2, 2005). Thereafter, following a stipulation by the parties, the district court dismissed Brinkmann's counterclaim without prejudice, leaving no issues unresolved. Terlep v. Brinkmann Corp., No. 02-CV-5127 (W.D. Ark. Mar. 24, 2005) ("Order II").

On March 10, 2005, Terlep filed a new notice of appeal and a motion to reinstate. In an Order entered April 11, 2005, this court recalled the mandate and reinstated the appeal. The appeal is now properly before us, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## II. ANALYSIS

### A. Standard of Review

"We review a district court's grant of summary judgment de novo." See Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1309, 1315 (Fed. Cir. 1998). Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). "In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the party opposing the motion, with doubts resolved in favor of the opponent." Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc., 145 F.3d 1303, 1307 (Fed. Cir. 1998). If there are no material facts in dispute precluding summary judgment, "our task is to determine whether the judgment granted is correct as a matter of law." Marathon Oil Co. v. United States, 177 F.3d 1331, 1337 (Fed. Cir. 1999).

A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." Carroll Touch, Inc. v. Electro Mech. Sys., Inc., 15 F.3d 1573, 1576 (Fed. Cir. 1993). Claim construction is an issue of law, see Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996), that we review de novo, see Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Infringement, whether literal or under the doctrine of equivalents, is a question of fact. See Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed. Cir. 1998).

B. Discussion

Terlep argues that the district court erred in granting summary judgment by concluding that the preamble of claim 1 of the '433 patent was a limitation, and that Brinkmann did not meet the "above" and "clear" limitations of claim 1. Brinkman responds that the district court correctly construed these limitations and, further, that the district court's judgment should be affirmed on the additional grounds that the limitations "semi-spherical," "directly," "plastic," and "tubular" have not been met. Because we conclude that the district court correctly construed the "clear" limitation of claim 1, and because summary judgment of non-infringement was proper on that basis, we do not consider Terlep's other arguments or Brinkman's additional grounds for affirmance.

1. Claim Construction

"The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." Embrex, Inc., v. Serv. Eng'g Corp., 216 F.3d 1343, 1347 (Fed. Cir. 2000) (internal quotations and citation omitted). Interpreting the asserted claims entails a review of the intrinsic evidence, which consists of the claim language, the written description, and the prosecution history. See id.; Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).

"[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Phillips v. AWH Corp., No. 03-1269, 03-1286, 2005 U.S. App. LEXIS 13954, at *29 (Fed. Cir. Jul. 12, 2005) (en banc) (internal quotations omitted). "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the

inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." Id. at *36-37. Extrinsic evidence such as dictionaries also "may be considered if the court deems it helpful in determining the true meaning of the language used in the patent claims," id. at *39 (internal quotations omitted), provided the court "attach[es] the appropriate weight . . . to those sources in light of the statutes and policies that inform patent law," id. at *58.

The district court construed the term "clear" of independent claim 1 to mean "transparent" or "having the property of transmitting light without appreciable scattering so that bodies lying beyond are seen clearly." Order I at 7. Terlep challenges the district court's interpretation arguing that the term should be construed to also cover translucent holders. Terlep contends that the intrinsic record requires only that the word "clear" be construed to permit the passage of light. Brinkmann responds that the district court's construction is correctly informed by the written description, which states that the purpose of the holder is to maximize light output, and that any other interpretation would be inconsistent with the '433 patent. Brinkmann adds that the "translucent" argument was not made to the district court and, thus, was waived.

Claim 1 recites an omni-directional LED lamp that has three elements: an LED; a semi-spherical reflector; and a clear plastic tubular holder. The claim sets forth the positional relation between these elements such that the light emitted from the LED is rendered omni-directional after reflecting off the semi-spherical reflector. See '433 patent, col. 6, ll. 26-27. The reflected light passes through the holder, which holds the

semi-spherical reflector. See id. at ll. 24-28. The text of claim 1 and the other claims provide little guidance on the meaning of the term "clear."

The written description discloses a preferred embodiment in which the LED is surrounded by "tubular canopies" or holders that are made of "clear and pliable plastic material." Id. at col. 3, ll. 58-59. Another embodiment describes a colored lens cover that is made "from clear colored plastic." Id. at col. 5, l. 1. While these passages are not particularly helpful in discerning the meaning of the term "clear," other portions of the written description provide greater guidance. The Background and Prior Art sections state that various techniques for applying diffusion directly to the LED surfaces had been attempted in the past and were unsuccessful in rendering the light emitted from the LED omni-directional. Id. at col. 1, ll. 37-45. The Summary of the Invention section describes the invention as an omni-directional LED lamp that does not use a diffusion lens over the LEDs. Id. at col. 2, ll. 5-7. Implicit in these passages is the distinction between lenses or holders that diffuse or scatter light and those that transmit light without obstruction. The written description is thus consistent with and supports the district court's construction of the term "clear" to refer to holders that are "transparent or [have] the property of transmitting light without appreciable scattering so that bodies lying beyond are seen clearly." Order I at 7.

Terlep argues that the written description also is consistent with a "translucent" holder because it refers to an embodiment in which "the lens cover . . . can include a phosphorescent coating which glows when the LED . . . is on so as to diffuse light evenly over a wide viewing angle and amplify visibility." See '433 patent, col. 5, ll. 54-57. However, the text quoted by Terlep relates to the embodiment of Figures 4A-4C,

04-1337                                   7

which does not include a "clear plastic tubular holder" as recited in claim 1, at issue in this case. Because the "lens cover" described supra is not the same structure as the "clear plastic tubular holder," compare id., Figures 4A-4C & col. 5, ll. 54-57, with id., Figure 2A & col. 3, ll. 57-65, Terlep's argument is misplaced. Moreover, there is nothing in the description of the phosphorescent coating embodiment to warrant construction of the term "clear" as it relates to the "clear plastic tubular holder" of claim 1 to include translucent holders.

The prosecution history further supports the district court's construction. On August 9, 1995, the application that issued as the '433 patent was filed. In a February 7, 1996 Office Action, the Examiner, inter alia, rejected claim 1 under 35 U.S.C. § 103(a) as being unpatentable over U.S. Patent No. 5,469,157 to Carpenter et al. in view of U.S. Patent No. 1,198,734 to Ludescher. In a May 6, 1996 Response ("Response"), Terlep amended claim 1 to add, inter alia, "a clear plastic tubular holder." Response at 1. Terlep distinguished the claimed invention from the prior art stating that the prior art disclosed rotating LEDs and LEDs having a top "flattened and . . . side surface(s) . . . sandblasted or otherwise roughened to diffuse the light output," whereas the "subject invention did not use any 'flattened' tops and/or 'sandblasted or roughened' sides." Response at 5. Because the "clear plastic tubular holder" limitation helped distinguish the prior art from the claimed invention, the prosecution history supports construing the term "clear" to exclude plastic holders that are translucent or otherwise diffuse the light emitted from the LED. See Seachange Int'l, Inc. v. C-Cor Inc., No. 04-1375, 04-1498, 2005 WL 1523382, at *8 (Fed. Cir. June 29, 2005) ("Where an applicant argues that a claim possesses a feature that the prior art does not possess in order to

overcome a prior art rejection, the argument may serve to narrow the scope of otherwise broad claim language.").

In construing the claims, the parties have cited several dictionaries. District courts are authorized "to rely on extrinsic evidence, which consists of all evidence external to the patent and prosecution history, including . . . dictionaries" as one of many claim construction tools. Phillips, 2005 U.S. App. LEXIS 13954, at *37 (internal citations omitted). The dictionary defines "clear" as "giving free passage to light or to the sight: easily seen through: not cloudy, turbid, or opaque." Webster's Third Int'l Dictionary 419 (1993). This definition lists "transparent" and "translucent" as synonyms. The definition also sets forth an express distinction between transparent and translucent: "transparent stresses complete absence of obstruction to vision" and "translucent applies to that which permits passage of light but bars clear and complete vision." Id. The distinction between these synonyms cannot be ignored. See Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1374 (2004) (holding that it was improper for the district court to adopt a definition that was attributed to a synonym of the disputed term while disregarding the distinction set forth in the usage note). Moreover, the distinction mirrors the distinction reflected in the written description and prosecution history between the unobstructed passage of light of the holder of the patented invention and the prior art structures that diffuse light. Here, the district court "attached appropriate weight" to the dictionary definitions in the context of the intrinsic evidence in reaching its construction of the claim term "clear." Phillips, 2005 U.S. App. LEXIS 13954, at *58.

Finally, Terlep argues that to define "clear" so as to exclude "translucent" is to import a functional limitation into the claim. Terlep asserts that "clear plastic tubular

holder" is merely a structural limitation and that the district court erred in importing a functional limitation into a structural term. However, Terlep fails to recognize that the construction properly adopted by the district court merely assigned meaning to the claim term "clear" and did not impermissibly import a functional limitation. Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so.").

We conclude that the district court correctly construed the term "clear" to mean "transparent or having the property of transmitting light without appreciable scattering so that bodies lying beyond are seen clearly," and that nothing in the claims or the written description warranted giving the term "clear" an expansive meaning that would cover "translucent" holders. Because Terlep's "translucent" argument is without merit, we need not consider Brinkmann's additional argument of waiver.

## 2. Infringement

"[F]or a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." Wolverine World Wide, Inc. v. Nike, Inc., 38 F.3d 1192, 1199 (Fed. Cir. 1994); see also Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997) (noting that because each limitation contained in a patent claim is material to defining the scope of the patented invention, a doctrine of equivalents analysis must be applied to individual claim limitations, not to the invention as a whole). "Application of the rule precluding use of the doctrine of equivalents to recapture claim scope surrendered during patent acquisition is a question of law." KCJ Corp. v. Kinetics Concepts, Inc., 223 F.3d 1351, 1359 (Fed. Cir. 2000).

Claim 1 recites a "clear plastic tubular holder." The district court concluded that there was no genuine issue of material fact that none of the accused products had a transparent holder. Order I at 10. Terlep argues that some of the Brinkmann products have a clear plastic cover. However, Terlep does not dispute the fact that, although some of Brinkmann's products have a transparent cover, none of them have a transparent holder. Terlep also does not contest that the Brinkmann products are ribbed and that the ribbed holders scatter the light shining from inside to prevent bodies inside the holder from being seen clearly. Id. Thus, Terlep has failed to provide any basis for us to conclude that the district court erred in determining that there was no genuine issue of material fact that the accused devices do not meet the "clear plastic tubular holder" limitation of claim 1. Because claim 4 depends from claim 1 and also possesses this limitation, it too is not literally infringed.

Terlep also challenges the district court's grant of summary judgment of non-infringement under the doctrine of equivalents. Specifically, Terlep argues that the district court erred in foreclosing its assertion of the doctrine of equivalents by reason of prosecution history estoppel. It asserts this argument despite its acknowledgement that the "clear plastic tubular holder" limitation was added during prosecution to help overcome the prior art. Terlep claims that this amendment does not bar it from asserting equivalents under the doctrine announced in Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 733 (2002). Under Festo, a narrowing amendment made to satisfy a requirement of the Patent Act may give rise to an estoppel. Id. at 736. Such a narrowing amendment creates a presumption that the patentee surrendered the territory between the original claims and the amended claims.

Id. at 741.  The patentee may rebut that presumption by showing that the alleged equivalent was unforeseeable at the time the amendment was made, that the alleged equivalent was tangential to the purpose of that amendment, or that there was some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question.  Id. at 740-41.

Terlep argues that its amendment of claim 1 to include the limitation "clear plastic tubular holder" does not estop it from asserting infringement under the doctrine of equivalents because the equivalent in question was tangential to the purpose of the amendment.  The primary consideration in determining when an amendment bears only a tangential relation to the equivalent in question is "whether the reason for the amendment is peripheral, or not directly relevant, to the alleged equivalent."  Insituform Techs., Inc. v. Cat Constr., Inc., 385 F.3d 1360, 1370 (Fed. Cir. 2004) (citing Festo Corp. v. Sheketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344 F.3d 1359, 1365 (Fed. Cir. 2003) (en banc)).  Terlep asserts that the prosecution history shows that the addition of the term "clear" was merely to describe the plastic used for the claimed "plastic holder," and thus the addition of that term is not directly relevant to the accused equivalent.  However, as discussed supra, Terlep amended claim 1 and argued patentability based on the diffusion characteristics of prior art LED devices and the absence of diffusion in the clear plastic tubular holder of the claimed invention.  Thus, it cannot be said that the reason for adding "clear" was tangential to the accused equivalents, which are holders that are ribbed and diffuse light.  See Festo, 344 F.3d at 1369 (noting that "the inquiry into whether a patentee can rebut the Festo presumption under the 'tangantial' criterion focuses on the patentee's objectively apparent reason for the narrowing amendment").

Thus, Terlep has failed to rebut the <u>Festo</u> presumption, and we affirm the district court's grant of summary judgment of non-infringement under the doctrine of equivalents as a matter of law.

## III. CONCLUSION

For the foregoing reasons, we affirm the district court's construction of the term "clear." We also affirm the district court's grant of Brinkmann's motion of summary judgment of non-infringement.

<u>AFFIRMED</u>