PROST, Circuit Judge,
dissenting-in-part.
I join the majority opinion except for Part B.2 of the Discussion section, reversing the district court and holding that the doctrine of equivalents is not precluded by prosecution history estoppel because the tangential exception applies, from which I respectfully dissent. The majority concludes that, by amending the claims, the patentees surrendered all other methods of disabling the hybridization capacity of repetitive sequences, but did not surrender equivalents of the nucleic acid that could be used to perform the blocking. In my view, this conclusion is contrary to this court’s precedent and to the proper application of prosecution history estoppel as set forth by the Supreme Court.
Under Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (“Festo /”), if the patentee narrows the scope of the claims of the patent in response to a rejection during prosecution, there is a presumption that the patentee is estopped from arguing that the surrendered territory comprises an equivalent for the purposes of infringement under the doctrine of equivalents. 535 U.S. 722, 739-40, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002); see Int’l Rectifier Corp. v. IXYS Corp., 515 F.3d 1353, 1358 (Fed.Cir. 2008). Prosecution history estoppel applies to any narrowing amendment made for a substantial reason related to patentability. Festo I, 535 U.S. at 739-40, 122 S.Ct. 1831. The majority recognizes that the amendment here was made in order to overcome certain prior art references and, thus, the amendment was made for a substantial reason related to patentability. A narrowing amendment is all that is required for the presumption of prosecution history estoppel to attach to bar the application of the doctrine of equivalents.
The presumption of prosecution history estoppel with regard to a narrowing amendment is absolute, i.e., an amendment is “presumed to be a general disclaimer of the territory between the original claim and the amended claim.” Festo I, 535 U.S. at 740, 122 S.Ct. 1831; Biagro W. Sales, Inc. v. Grow More, Inc., 423 F.3d 1296,- *1381 1305 (Fed.Cir.2005); Terlep v. Bririkmann Corp., 418 F.3d 1379, 1385 (Fed.Cir.2005). The fact that narrowing the claim to a method of blocking with a “blocking nucleic acid” may not have been necessary to distinguish over the prior art does not change the analysis. As this court has previously stated:
[T]here is no principle of patent law that the scope of a surrender of subject matter during prosecution is limited to what is absolutely necessary to avoid a prior art reference that was the basis for an examiner’s rejection. To the contrary, it frequently happens that patentees surrender more through amendment than may have been absolutely necessary to avoid particular prior art. In such cases, we have held the patentees to the scope of what they ultimately claim, and we have not allowed them to assert that claims should be interpreted as if they had surrendered only what they had to.
Norian Corp. v. Stryker Corp., 432 F.3d 1356, 1361-62 (Fed.Cir.2005). Here, the amendment narrowed the scope of the invention from any method of disabling the hybridization capacity of repetitive sequences to a method of disabling repetitive sequences using “blocking nucleic acids.” The parties have stipulated that “blocking nucleic acid” means “fragments of repetitive-sequence-enriched DNA or RNA.” Therefore, the patentee surrendered all other methods for disabling hybridization capacity of repetitive sequences including methods of blocking other than with DNA or RNA. It is irrelevant to the determination of the scope of the surrendered territory that to overcome the prior art references the patentee did not need to amend the claims to a method of disabling the hybridization capacity of repetitive sequences by blocking with a “blocking nucleic acid,” but instead could have amended the claims to a method of disabling repetitive sequences by blocking.
Under Festo I, the presumption of a wholesale surrender of territory between the original claim and the amended claim may only be rebutted if the patentee is able to show that one of the exceptions applies. 535 U.s! at 740-41, 122 S.Ct. 1831. The appellants do not suggest that this case falls under the “some other reason” exception. The appellants do not and cannot assert the “unforeseeable” exception since PNAs were discovered prior to when the narrowing amendment was made. See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co. (“Festo II ”), 344 F.3d 1359, 1369 (Fed.Cir.2003). Rather, before the district court and on appeal, the appellants raised only the tangential exception. The majority agrees that the tangential exception bars application of prosecution history estoppel. In so concluding, they reason that the patentee, in narrowing the claims to overcome the prior art, focused on the method of blocking and not on the particular type of nucleic acid that could be used in the blocking.
, “[T]he inquiry into whether a patentee can rebut the Festo presumption under the ‘tangential’ criterion focuses on the patentee’s objectively apparent reason for the narrowing amendment.” Id. The primary consideration is “whether the amendment is peripheral or not directly relevant, to the alleged equivalent.” Id. Here, the reason for the amendment bears more than a tangential relationship to the equivalent. The amendment limits the claims to a method of disabling repetitive sequences by blocking with “blocking nucleic acids” (i.e., DNA or RNA). In making the amendment, the appellants presumptively surrendered any other means of disabling repetitive sequences. The equivalent, PNA, however, functions to do exactly that, i.e., to disable repetitive sequences. Hence, the purpose for the amendment is not unrelated to the equivalent. See Int’l Rectifier, at 1358; Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 480 *1382 F.3d 1385, 1343 (Fed.Cir.2007); Biagro, 423 F.3d at 1306; Terlep, 418 F.3d at 1379; Rhodia Chimie v. PPG Indus. Inc., 402 F.3d 1371, 1383 (Fed.Cir.2005).
The appellants rely on two cases to support application of the tangential exception, Insituform Technologies, Inc. v. CAT Contracting, Inc., 385 F.3d 1360 (Fed.Cir. 2004), and Primos, Inc. v. Hunter’s Specialties, Inc., 451 F.3d 841 (Fed.Cir.2006). However, this case is distinguishable from both of those cases. The patent at issue in Insituform was directed to a method for performing pipe repair without removing the damaged pipe from the ground. 385 F.3d at 1362. The patented method comprised impregnating a curable resin to the inside of the tube while applying a vacuum. Id. at 1368-69. The original claims did not specify the position or number of vacuum cups. Id. at 1369. The prior art method suffered from the problem that the vacuum was at the far end of the tube opposite the resin source and required an exceedingly large suction compressor. Id. To overcome the prior art, the patent claims were amended to specify that the vacuum source was close to the resin source. Id. at 1369-70. The alleged equivalent differed from the claimed method only in that it used multiple vacuum cups. Id. at 1369. Thus, we held that the narrowing amendment was tangential to the equivalent, which used multiple cups. Id. at 1370.
In Primos, the patent was directed to a diaphragm mouth call used by hunters to simulate animal sounds. 451 F.3d at 843. The prior art device contained a shelf structure which was directly above the membrane with no space in between. Id. at 849. During prosecution, the claims were amended to add a limitation requiring that the plate be “differentially spaced” above the membrane. Id. The alleged equivalent contained a dome, instead of a plate, which was similarly spaced above the membrane. Id. We concluded, therefore, that the equivalent (dome as opposed to plate) was tangential to the purpose of the amendment, which was to require spacing between the plate and the membrane. Id.
In both Insituform and Primos, “the reason for the amendment and the alleged equivalent involved different aspects of the invention.” Biagro, 423 F.3d at 1306. Here, the purpose for the amendment and the accused equivalent do not involve different aspects of the invention. Indeed, they both relate to the means for disabling repetitive sequences. Therefore, the equivalent is not tangential to the purpose for the amendment. To overcome the presumption of prosecution history estoppel “[t]he patentee must show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent.” Festo I, 535 U.S. at 741, 122 S.Ct. 1831. Here, the appellants could reasonably have been expected to have drafted a claim that encompassed blocking repetitive sequences using PNA. The appellants should, therefore, be estopped from asserting that PNA is an equivalent to “blocking nucleic acid” in the '841 patent.
For these reasons, I respectfully dissent.