# United States Court of Appeals for the Federal Circuit

2007-1220

NUFARM AMERICA'S, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Joel R. Junker, Joel R. Junker & Associates, of Seattle, Washington, argued for plaintiff-appellant. With him on the brief was William N. Baldwin.

Todd Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. On the brief were Jeanne E. Davidson, Director, of Washington, DC; and Barbara S. Williams, Attorney in Charge, International Trade Field Office, of New York, New York. Of counsel on the brief was Beth C. Brotman, Office of the Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

2007-1220

NUFARM AMERICA'S, INC.,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of International Trade, no. 02-00162, Judge Evan J. Wallach.

_____

DECIDED:  April 7, 2008

_____

Before RADER, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and PROST, Circuit Judge.

RADER, Circuit Judge.

On summary judgment, the United States Court of International Trade held that 19 C.F.R. § 181.53 does not violate Article I, Section 9, Clause 5 of the United States Constitution ("the Export Clause").  Nufarm America's, Inc. v. United States, 477 F. Supp. 2d 1290 (CIT 2007) ("Nufarm II").  The trial court also denied Nufarm America's, Inc.'s, ("Nufarm's") motion for class certification under USCIT Rule 23(c). Nufarm America's, Inc. v. United States, 398 F. Supp. 2d 1338 (CIT 2005) ("Nufarm I"). Because 19 C.F.R. § 181.53 does not violate the Export Clause and the class certification issue is moot, this court affirms.

I

Nufarm imported chemical products into the United States from Australia and the Netherlands. The products entered under Harmonized Tariff Schedule ("HTSUS") Subheading 9813.00.05, which defers the import duty on goods imported for repair, alteration, or processing until the goods are exported. Nufarm processed the imported chemicals into herbicides and then exported that product to Canada. At the time of export, the United States Customs Service assessed a deferred duty on the goods under 19 C.F.R. § 181.53.

Nufarm protested that 19 C.F.R. § 181.53 violates the Export Clause of the Constitution. On August 9, 2001, Customs denied the protest explaining that the regulation imposes liability for the duty at the time of importation and not exportation. Customs explained that 19 C.F.R. § 181.53 simply defers payment of the duty on some goods until a later export without transforming the import duty into an export duty.

II

As a threshold matter, this court declines to entertain any challenges raised for the first time on appeal regarding Article 303 of the North American Free Trade Agreement ("NAFTA") and its implementing statute U.S. Note 1(c), chapter 98, subchapter XIII, HTSUS ("U.S. Note 1(c)"). Because the Court of International Trade has not received the opportunity to consider and decide any questions involving NAFTA and U.S. Note 1 (c), those issues are not ripe for appeal. Henke v. United States, 60 F.3d 795, 802 (Fed. Cir. 1995) (Rader, J., dissenting) ("Courts of appeal generally will not entertain arguments or consider issues raised for the first time in appeal. This court only does so in rare cases to avoid injustice."). Accordingly, this court devotes its

attention solely to the constitutionality of the deferred duty regulation and refers to U.S. Note 1(c) only to provide context for its implementing regulation, 19 C.F.R. § 181.53.

When the Court of International Trade grants summary judgment, this court reviews that decision "for correctness as a matter of law, deciding de novo the proper interpretation of the governing statute and regulations as well as whether genuine issues of material fact exist."  Texaco Marine Servs., Inc. v. United States, 44 F.3d 1539, 1543 (Fed. Cir. 1994) (quoting St. Paul Fire & Marine Ins. Co. v. United States, 6 F.3d 763, 767 (Fed. Cir. 1993)).  This court must also interpret and enforce the provisions of the Constitution without any deference for the trial court decision.

The Export Clause of the United States Constitution provides:  "No Tax or Duty shall be laid on articles exported from any State."  U.S. Const. art. I, § 9, cl. 5.  The United States Supreme Court has recently interpreted this clause to bar a "tax" for harbor maintenance on exports, United States v. U.S. Shoe Corp., 523 U.S. 360 (1998) (holding that the Harbor Maintenance Tax ("HMT") is an impermissible tax on exports and does not qualify as a permissible user fee), and to bar a tax on export transit goods. United States v. IBM Corp., 517 U.S. 843, 845 (1996) (holding that the United States Constitution does not permit the imposition of a generally applicable, nondiscriminatory federal tax on goods in export transit).  Reading these cases broadly, Nufarm contends that 19 C.F.R. § 181.53 also violates the Export Clause both on its face and as applied. On its face, 19 C.F.R. § 181.53 expressly refers to a duty on imports, not exports:

> Where a good is imported into the United States pursuant to a duty-deferral program and is subsequently withdrawn from the duty-deferral program for exportation to Canada or Mexico or is used as a material in the production of another good that is subsequently withdrawn from the duty-deferral program for exportation to Canada or Mexico, and provided that the good is a "good subject to NAFTA drawback" within the meaning

of 19 U.S.C. § 3333 and is not described in § 181.45 of this part, the documentation required to be filed under this section in connection with the exportation of the good shall, for purposes of this chapter, constitute an entry or withdrawal for consumption and the exported good shall be subject to duty which shall be assessed in accordance with paragraph (b) of this section.

19 C.F.R. § 181.53(a)(2)(i)(A) (emphases added). Thus, the regulation begins with reference to "a good imported into the United States." The terms "exportation" or "exported good" are each, in turn, merely references back to the imported good.

Sub-section (b), referenced in the last line of the provision above, states:

Except in the case of a good imported from Canada or Mexico for repair or alteration, where a good, regardless of its origin, was imported temporarily free of duty for repair, alteration or processing (subheading 9813.00.05, Harmonized Tariff Schedule of the United States) and is subsequently exported to Canada or Mexico, duty shall be assessed on the good on the basis of its condition at the time of its importation into the United States. Such duty shall be paid no later than 60 calendar days after either the date of exportation or the date of entry into a duty-deferral program of Canada or Mexico, except that, upon filing of a proper claim under paragraph (a)(3) of this section, the duty shall be waived or reduced in an amount that does not exceed the lesser of the total amount of duty payable on the good under this section or the total amount of customs duties paid to Canada or Mexico.

19 C.F.R. § 181.53(b)(5) (emphasis added). This subsection assesses the duty on the import based on its condition at the time of importation, thus further distinguishing this fee from an export tax or duty.

The Court of International Trade accurately determined that the regulation imposes an import duty, but postpones its collection until the time of export: "The language in the challenged regulation clearly requires that the duties in question are to apply to the goods as a result of their status as imports, not as exports." Nufarm II at 1295.

This court appreciates that an isolated clause from 19 C.F.R. § 181.53(a)(2)(i)(A) states that "the exported good shall be subject to duty. . . ."  Similarly, another isolated phrase observes that "where a good . . . was imported temporarily free of duty for repair, alteration or processing . . . and is subsequently exported to Canada or Mexico, duty shall be assessed on the good."  (emphases added).  Taken out of context, those passages suggest an impermissible tax or duty on exports.  These excerpts, however, are merely isolated strands of the entire fabric of the regulation.  When those strands are woven back into the fabric where they belong, the entire context shows that the regulation imposes a duty on imports, not exports.  The opening phrase of the regulation refers to the "imported" good.  All later "exported goods" passages are merely references, in different terms, to the imported goods.

Moreover the phrase "the exported good shall be subject to duty" reads in context "the exported good shall be subject to duty which shall be assessed in accordance with paragraph (b) of this section."  19 C.F.R. § 181.53(a)(2)(i)(A) (emphasis added).  The reference to paragraph (b), as noted earlier, assesses the duty on the good as an import and in the condition of the good at the time of import, even though the regulation defers collection until the time of export.

Thus, the entire regulation, read in context, refers to a duty on imports deferred until the time of export. The duty, however, is a tax on imports, not exports. Consequently, the regulation is not unconstitutional on its face.

The language of U.S. Note 1(c)—the basis for the regulation in the first place— also shows that the duty falls on imports.  As mentioned before, the provision under which Nufarm's chemicals were entered, Subheading 9813.00.05 HTSUS, provides for

a temporary duty-free entry for repair, alteration, or processing. U.S. Note 1(c) describes the operation of this temporary deferral:

> For purposes of this subchapter, <u>if an article imported into the United States, for processing, under heading 9813.00.05 is withdrawn for exportation to the territory of Canada or of Mexico, the duty assessed shall be waived or reduced in an amount that does not exceed the lesser of the total amount of duty payable on the article that would have been payable on importation</u> under chapters 1 through 97, inclusive, of the Harmonized Tariff Schedule of the United States or the total amount of customs duties paid to Canada or to Mexico on the exported article, unless such article is covered by section 203(a)(1) through 203(a)(8), inclusive, of the NAFTA Implementation Act . . .

U.S. Note 1(c), chapter 98, subchapter XIII, HTSUS (emphasis added). This language attaches the duty to "an article imported into the United States" and assesses an amount, on the basis, in part, of the amount "payable on importation."

This court also perceives no merit in the challenge to the constitutionality of the regulation as applied. This court is aware that the obligation to pay the duty only arises upon export to a NAFTA country, but the timing does not convert the import duty into a tax on exports. The liability to pay this duty arises under HTSUS Subheading 9813.00.05 upon import. To ease correct assessment, the regulation merely postpones collection of the import duty until the time of export. An imported product destined for a NAFTA country receives a different assessment that an imported product destined for a non-NAFTA country. Depending on the ultimate destination of an import, the duty assessment could even be zero. Therefore, the regulation effects a deferral to ensure proper calculation of duty rates. None of this transforms the import duty into an export duty. Indeed, in all circumstances the liability to pay a duty attaches at import. The

regulation imposes a duty on imports but defers calculation and collection of the exact amount of the vested liability.

In Ammex, Inc. v. United States, this court analyzed the terms imposed and assessed. 419 F.3d 1342 (Fed. Cir. 2005). Assessment was found to refer to a recordation of the calculated amount of liability, while imposition was found to be the creation, but not calculation of, a liability. See id. at 1345 ("While assessment determines the specific amount of liability, imposition is simply a statement that liability exists."). Applying these definitions to the situation at hand, 19 C.F.R. § 181.53 imposes liability upon import while postponing the assessment of the amount of the previously imposed importation duty.

The express due date of the duty payment in 19 C.F.R. § 181.53, 60 days after export, also does not operate to make the regulation unconstitutional as applied. The regulatory language that ties the due date to export does not convert the import duty into an export tax. This timing clause operates to set a time for the accrual and computation of interest. Once again, this procedure does not change the imposition of liability at importation.

Likewise, the requirement to list a date of export on the Customs Entry Summary does not convert this import duty into an export tax. This filing information sets the 60-day deadline in motion. Neither this procedure nor the use of bonds to secure payment indicates that the duty is on exports. In sum, this court detects no error in the trial court's determination that the regulation does not place an unconstitutional tax on exports.

III

Nufarm also appeals the trial court's denial of class certification.  Nufarm I.  The class would consist of all individuals who paid duties pursuant to 19 C.F.R. § 181.53 (duty deferral programs).  The Court of International Trade held that because 28 U.S.C. § 1581(a) was manifestly adequate, 28 U.S.C. § 1581(i), which covers residual jurisdiction, was unavailable.  This court's decision upholding the constitutionality of 19 C.F.R. § 181.53 renders the issue of class certification moot.  Even if this court were to allow other members into the class, their arguments regarding the constitutionality of the regulation would fail.  Consequently, the appeal of Nufarm I is dismissed as moot.

IV

In sum, because the trial court did not err in its decision regarding the constitutionality of 19 C.F.R. § 181.53, this court affirms.

AFFIRMED