**CONSOLIDATION COAL COMPANY, et al., Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Wellmore Energy Co., LLC, Plaintiff,**

v.

**The United States, Defendant.**

**Nos. 01–254C, 01–442C.**

United States Court of Federal Claims.

March 4, 2009.

Steven H. Becker, New York City, attorney of record for Consolidation Coal Company, et al, and Paul A. Horowitz, Charles H. Critchlow, and Suzanne I. Offerman, of counsel. John Y. Merrell, Jr., McLean, Virginia, attorney of record for Wellmore Energy Co., LLC.

Tara K. Hogan, Department of Justice, Washington, D.C., with whom was Assistant Attorney General Gregory G. Katsas, for Defendant. Jeanne E. Davidson, Director, Todd M. Hughes, Deputy Director, and Daniel W. Kilduff, of counsel, Department of the Interior.

### OPINION & ORDER

FUTEY, Judge.

This case comes before the Court on the parties' cross motions for summary judgment

following a remand from the United States Court of Appeals for the Federal Circuit. Plaintiffs are operators of coal mining operations. Pursuant to Title IV of the Surface Mining Control and Reclamation Act of 1977 ("SMCRA") and its implementing regulations, plaintiffs paid a reclamation fee on coal, some of which was exported to foreign customers. Throughout this lengthy litigation, plaintiffs have maintained that the reclamation fee, as applied to exports, violates the Export Clause of the United States Constitution. In their instant motion, notwithstanding the Federal Circuit's finding that the reclamation fee is constitutional, plaintiffs assert that the regulations through which the fees are imposed violate the Export Clause. Specifically, plaintiffs contend that the Federal Circuit did not resolve the constitutionality of the regulatory scheme and that the D.C. Circuit's decision in *Drummond Coal Co. v. Hodel*, confirms that the reclamation fee regulations violate the Export Clause. 796 F.2d 503 (D.C.Cir.1986). Plaintiffs request that this Court grant their motion for summary judgment on the issue of liability and issue a new money judgment in Jim Walter Resources' favor.

Defendant conversely asserts that the Federal Circuit's Opinion fully disposed of the case and mandates dismissal by this Court. In the alternative, defendant contends that the reclamation fee regulations do not violate the Export Clause; that even if the regulations were unconstitutional, plaintiffs would remain obligated to pay reclamation fees pursuant to statute; and that plaintiffs' argument amounts to a rulemaking challenge over which this Court lacks jurisdiction. Defendant requests that this Court grant its motion for summary judgment and dismiss plaintiffs' claims.

Presently before the Court are: Plaintiffs' Post–Remand Motion For Summary Judgment, Defendant's Response In Opposition To Plaintiffs' Post–Remand Motion For Summary Judgment And Cross–Motion For Summary Judgment; Plaintiffs' Reply Brief In Support Of Post–Remand Motion For Summary Judgment And Brief In Opposition To Defendant's Cross–Motion For Summary Judgment; Defendant's Reply To Plaintiffs' Response To Defendant's Cross–Motion For Summary Judgment; and Defendant's Supplemental Appendix. The Court held oral argument on the motions for summary judgment on February 3, 2009.

1. *Background*[1]

In 1977, Congress enacted the SMCRA to protect the population and the environment from the possible negative side effects of surface coal mining. *See* 30 U.S.C. § 1202(a) (2009). Congress determined that the burden of restoring the mining lands should be borne by the coal industry. H.R. REP. NO. 218, at 136 (1977), *reprinted in* 1977 U.S.C.C.A.N. 593, 668. In order to accomplish this goal, Congress established the Abandoned Mine Reclamation Fund ("Fund"), a trust fund used for the purpose of restoring various natural resources that had been damaged due to mining. 30 U.S.C. § 1231(a), (c)-(d) (2009). The Fund primarily derives revenue from an exaction imposed upon "coal produced." *Id.* § 1232(a) (2009); 30 C.F.R. § 870.12(a) (2009).

Specifically, the SMCRA provides:

All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less....

30 U.S.C. § 1232(a) (2001).[2] The Secretary of the Interior ("Secretary") subsequently

---

1. The facts were discussed in detail in the Court's Opinion granting defendant's motion to dismiss, *Consolidation Coal Co. v. United States*, 54 Fed. Cl. 14, 15–16 (2002)("*Consolidation I* "); in the Federal Circuit's decision, *Consolidation Coal Co. v. United States*, 351 F.3d 1374, 1376–77 (Fed.Cir.2003); and in the Court's Opinion granting plaintiffs' motion for summary judgment, *Consolidation Coal Co. v. United States*, 64

Fed.Cl. 718, 720–22 (2005)("*Consolidation II* "). Undisputed factual assertions are repeated herein and supplemented where necessary to provide factual information pertinent to this Opinion.

2. The current version of the SMCRA provides for a reclamation fee of 31.5 cents per ton of coal produced by surface mining and 13.5 cents per

promulgated regulations implementing the reclamation fee, pursuant to its authority under 30 U.S.C. § 1211(c)(2) (2009)(giving the Secretary the power to "publish and promulgate such rules and regulations as may be necessary to carry out the purposes and provisions of this chapter."). The regulations provide that "[t]he operator shall pay a reclamation fee on each ton of coal produced for sale, transfer, or use...." 30 C.F.R. § 870.12(a). Additionally, "[t]he fee shall be determined by the weight and value at the time of initial bona fide sale, transfer of ownership, or use by the operator." *Id.* § 870.12(b). Finally, "[t]he weight of each ton shall be determined by the actual gross weight of the coal," including "[i]mpurities that have not been removed prior to the time of initial bona fide sale, transfer of ownership, or use by the operator." *Id.* § 870.12(b)(3)(i).

In accordance with the SMCRA and its implementing regulations, plaintiffs paid reclamation fees on coal, some of which was sold to foreign customers. On April 27, 2001, Consolidation Coal Company brought suit in the United States Court of Federal Claims alleging that the reclamation fee, as applied to coal for export, violated the Export Clause of the United States Constitution.[3]

### a. *Consolidation I*

On August 14, 2002, the Court dismissed plaintiffs' complaint for lack of subject matter jurisdiction. The SMCRA specifically provides that the United States District Court for the District of Columbia has jurisdiction over challenges to regulations promulgated pursuant to the SMCRA, and that petitions "shall be filed ... within sixty days from the date of such action [by the Secretary], or after such date if the petition is based solely on grounds arising after the sixtieth day." 30 U.S.C. § 1276(a)(1) (2009). Because plaintiffs were challenging the implementing regulations, the Court determined that it lacked jurisdiction to hear plaintiffs' claims. The United States Court of Appeals for the Federal Circuit, however,

reversed the Court's decision on appeal, and remanded the case for further proceedings. The Federal Circuit found that "the Export Clause provides the coal producers with an independent self-executing cause of action that allows for Tucker Act jurisdiction in the Court of Federal Claims." *Consolidation Coal Co.,* 351 F.3d at 1379. Moreover, because Congress did not unambiguously withdraw Tucker Act jurisdiction over constitutional challenges to the reclamation fee regulation, the Court could properly hear plaintiffs' claims. *See Id.* at 1380–81.

### b. *Consolidation II*

Following the Federal Circuit's remand, the Court granted plaintiffs' first motion for summary judgment on April 4, 2005, finding that imposition of the reclamation fee on coal for export violated the Export Clause. The crucial inquiry was whether the fee on "coal produced" is imposed solely upon extraction of the coal, or upon the extraction and sale of the coal. *See Consolidation II,* 64 Fed.Cl. at 724. If imposed upon extraction alone, the fee is constitutional; if imposed upon the extraction and sale of coal, however, the fee is unconstitutional. *Id.* The Court considered both the reclamation fee statute and regulations, and ultimately relied on the D.C. Circuit's finding in *Drummond,* that the term "production" under the SMCRA "could reasonably be interpreted to include the entire process of extracting and selling coal, complete from pit to buyer's door." 796 F.2d at 505. The Court therefore concluded that the term "coal produced" as used in the statute and regulations is not confined to extraction and, because the fee is imposed at the time of sale, it violates the Export Clause. *Consolidation II,* 64 Fed.Cl. at 726–27.

On June 11, 2008, the Federal Circuit reversed the Court's finding that "application of the [SMCRA] reclamation fee to export sales of coal violates the Export Clause of the Constitution." *Consolidation Coal Co. v. United States,* 528 F.3d 1344, 1346 (2008).

---

ton of coal produced by underground mining. *See* 30 U.S.C. § 1232(a).

**3.** Plaintiffs initially asserted a claim under the Takings Clause as well; however, that claim was subsequently withdrawn.

The Federal Circuit agreed with the Court that if the reclamation fee is imposed upon extraction alone, it is constitutional; whereas, if it is imposed upon extraction and sale, it is unconstitutional in violation of the Export Clause. *Id.* at 1347. Nevertheless, the Federal Circuit relied upon the canon of constitutional avoidance to preserve the constitutionality of the reclamation fee. The court examined both the SMCRA and its implementing regulations, and found that the meaning of the term "coal produced" in the SMCRA is ambiguous, that it "can reasonably be interpreted to mean 'coal extracted,' and that such an interpretation avoids a potential violation of the Export Clause." *Id.* That interpretation therefore prevailed. *Id.* at 1348. The Federal Circuit consequently reversed the Court's grant of summary judgment, and remanded the case to the Court for "proceedings consistent with this opinion." *Id.*

Upon resumption of proceedings before the Court, plaintiffs insisted upon filing a renewed motion for summary judgment. The policy of the Court is not to reject a request by a party to file pleadings regarding a potentially pending legal issue; plaintiffs filed their Post–Remand Motion for Summary Judgment with the Court on September 3, 2008.

### 2. *Discussion*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Jay v. Sec'y of Dep't of Health & Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.1993). A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1562–63 (Fed.Cir.1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the nonmoving party to proffer such evidence. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The court must resolve any doubts about factual issues in favor of the party opposing summary judgment, to whom the benefits of all favorable inferences and presumptions run. *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir. 1984).

The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of each party's motion. *Prineville Sawmill Co., Inc. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988)(citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1390–91 (Fed.Cir.1987)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc. v. United States,* 33 Fed.Cl. 514, 518 (1995). Therefore, it does not follow that if one motion is rejected, the other is necessarily supported. *Id.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* (citing *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992)).

Plaintiffs' pending motion for summary judgment is premised upon their allegation that the Federal Circuit "left open for resolution by this Court on remand[ ] the question of whether [Department of Interior's Office of Surface Mining Reclamation and Enforcement ('OSM')]'s *administration* of the statute, through its regulations, imposes the reclamation fee on coal extracted *and sold,* and thus violates the Export Clause when applied to export sales of coal." Pls.' Br. in Supp. of Post–Remand Mot. for Summ. J. at 2 (emphasis in original). Plaintiffs assert that the issue of constitutionality of the regulations is distinct from that of the constitutionality of the statute, and further contend that the

reclamation fee regulations are unconstitutional as applied to exports. *Id.* at 4. Specifically, plaintiffs argue that *Drummond* confirms that the regulations interpret the term "coal produced" to mean both the extraction and sale of coal, and that the application of the reclamation fee through the regulations therefore violates the Export Clause. *Id.* at 3. Defendant, on the other hand, asserts that the Federal Circuit's decision disposes of all plaintiffs' statutory and regulatory claims, and that plaintiffs' complaint must consequently be dismissed.

### a. *Applicability of* **Drummond**

Plaintiffs' primary argument is based on the D.C. Circuit's decision in *Drummond. See* 796 F.2d 503. Plaintiffs assert that *Drummond* confirms that OSM's regulations interpret the term "coal produced" as encompassing both the extraction and sale of coal, and plaintiffs argue that this Court should find the same. Nevertheless, plaintiffs unsuccessfully advanced the same argument in their first motion for summary judgment.

In *Drummond,* the plaintiff challenged a revision to the reclamation fee regulation; the challenged revision resulted in the inclusion of excess moisture in the gross weight of the coal upon which the reclamation fee was assessed. *See Id.* at 504; *see also* 30 C.F.R. § 870.12(b)(3)(i) (1985). The plaintiff argued that the regulation exceeded the Secretary's statutory authority because the term "coal produced" as used in the statute was limited to mean "coal extracted," and therefore did not encompass moisture added to the coal post-extraction. *Id.* Both the district court and the D.C. Circuit, however, found the term "coal produced" to be ambiguous. *Id.* at 505; *Drummond Coal Co. v. Hodel,* 610 F.Supp. 1489, 1497 (D.D.C.1985). The Court of Appeals consequently determined that the Secretary's regulation was owed deference in the absence of a showing of contrary Congressional intent. *Id.* Significantly, the Court of Appeals refrained from affirmatively defining the term "coal produced." *See Id.*

For the purposes of the issue presently before the Court, *Drummond* is inapposite. The Federal Circuit has specifically stated that the *Drummond* decision is not relevant to "[t]he issue of the constitutionality of the reclamation fee as applied to exports." *Consolidation Coal Co.,* 528 F.3d at 1347. Moreover, the Federal Circuit determined that term "coal produced" in the SMCRA means "coal extracted." *Id.* at 1348. Therefore, Plaintiffs' continued reliance on *Drummond* to invalidate the reclamation fee regulations as unconstitutional is misplaced.

### b. *Effect of the Federal Circuit's Decision*

In its decision of June 11, 2008, the Federal Circuit found that the SMCRA reclamation fee is constitutional. More specifically, the court held that the meaning of the term "coal produced" is limited to mean "coal extracted." *Id.* The same, pivotal term is used in the statute, which assesses the fee, as well as in the regulations, which address when the fee is collected; the Federal Circuit examined both the statute and the regulations to determine the meaning of the term. *See Id.* at 1347. Defendant avers that the Federal Circuit's emphasis on the use of the term in the regulations and statute confirms that its construction of the term applies to both. *See* Def.'s Resp. in Opp'n to Pls.' Post–Remand Mot. for Summ. J. & Cross–Mot. for Summ. J. at 5. Plaintiffs counter this claim, asserting that the Federal Circuit's construction of the term "coal produced" is limited to the use of that term in the statute, and that the meaning of the term in the regulations is separate and distinct. Pls.' Reply Br. at 1; Pls.' Br. in Supp. of Post–Remand Mot. for Summ. J. at 14. Nonetheless, during oral argument, plaintiffs conceded that the term "coal produced" means the same thing in the statute and its implementing regulations. Tr. at 12:18–22. Plaintiffs went on to argue that the issue of the definition is a "red herring," however, and that the real issue is the nature and operation of the regulations. Tr. at 11:3–4; 13:18–20.

Plaintiffs additionally contend that the Federal Circuit's decision in *Nufarm America's, Inc. v. United States,* stands for the proposition that the constitutionality of a statute and its regulations are to be considered separately. Pls.' Reply Br. at 1–2; *see* 521 F.3d 1366 (Fed.Cir.2008). In *Nufarm,*

the plaintiff challenged a regulation as violating the Export Clause. *See* 521 F.3d 1366. The *Nufarm* plaintiff never challenged the constitutionality of the statute; consequently, neither the trial court nor the court of appeals considered it, and the plaintiff was subsequently permitted to raise the issue. *See Id.* Plaintiffs here contend that, like in *Nufarm*, the Federal Circuit considered only the constitutionality of the statute, and that this Court may therefore consider the constitutionality of the regulations separately on remand. Nevertheless, the facts here are easily distinguishable from those in *Nufarm*. Throughout this litigation, plaintiffs' claim has involved a challenge to the constitutionality of both the statute and the regulations; in *Nufarm*, the constitutionality of the statute was never at issue. Furthermore, this Court's prior decision in *Consolidation II* considered both the statute and the regulations, as did plaintiffs' briefs before the Federal Circuit, and the Federal Circuit's Opinion. Thus, *Nufarm* is inapplicable here.

Moreover, the Court agrees with defendant that the Federal Circuit already addressed and resolved the constitutionality of both the reclamation fee statute and its implementing regulations. In its Opinion, the Federal Circuit expressly states that it "adopt[s] the reasonable construction that as applied to the SMCRA reclamation fee 'coal produced' is limited to 'coal extracted.'" *Consolidation Coal Co.*, 528 F.3d at 1348. The SMCRA reclamation fee is the subject of both the statute and the regulations; this language plainly applies to both. The Federal Circuit further clarifies its consideration of the regulatory scheme by discussing this Court's summary judgment opinion, which it is directly reviewing, as ruling that "*the method* by which the Office of Surface Mining Reclamation and Enforcement (OSM) collects its reclamation fee violates the Export Clause of the Constitution." *Id.* at 1346 (emphasis added). Finally, the Federal Circuit explicitly reverses this Court's finding that the "*application of* the [SMCRA] reclamation fee to export sales of coal violates the Export Clause of the Constitution." *Id.* (emphasis added). Plaintiffs allege that the Federal Circuit failed to address "the question of whether OSM's *administration* of the stat-

ute, through its regulations ... violates the Export Clause when applied to export sales of coal." Pls.' Br. in Supp. of Post–Remand Mot. for Summ. J. at 2. The Federal Circuit was, however, clear that it was not only addressing the statute assessing the reclamation fee, but also the method by which the reclamation fee is collected: through OSM's regulations.

The Federal Circuit's decision in *Int'l Rectifier Corp. v. IXYS Corp.*, similarly confirms this finding. *See* 515 F.3d 1353 (Fed.Cir. 2008). In *Int'l Rectifier*, the plaintiff attempted to raise a procedural issue on appeal that it had argued in a previous appeal in the same case. Notwithstanding the court's failure to explicitly address the issue in its earlier opinion, the court concluded that it had "necessarily rejected" the plaintiff's arguments as to that issue. *Id.* at 1360 (citing *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1478 (Fed.Cir.1998)) ("[I]n some cases issues not explicitly addressed by an appellate court may nonetheless be decided by necessary implication."). The court explained that its earlier mandate as to other claims in the case implicitly required the district court to treat the contested issue the same way. *Id.* at 1360. The court also noted specifically that the contested issue was raised in both parties' briefs during the last appeal. *Id.* Plaintiffs here attempt to distinguish *Int'l Rectifier* by arguing that the trial court's consideration of the claims on remand there necessitated a decision on the procedural issue, which plaintiffs claim is not the case here. Tr. at 30:14–20. Nonetheless, plaintiffs' reading of *Int'l Rectifier* is inaccurate. The critical factor in *Int'l Rectifier* was that the parties had fully briefed and argued the issue before the court. Likewise here, plaintiffs' briefs on appeal addressed both the regulations and the statute. This Court's prior decision fully considered the regulations and the statute. *See Consolidation II*, 64 Fed.Cl. at 719, 721, 726. Most significantly, the Federal Circuit acknowledged its consideration of the regulations in its Opinion. Therefore, the Federal Circuit's Opinion fully disposed of plaintiffs' statutory and regulatory claims. The Court need not address the parties' remaining arguments,

and defendant is entitled to summary judgment in its favor.

### 3. *Conclusion*

For the foregoing reasons, Plaintiffs' Post–Remand Motion For Summary Judgment is DENIED, and Defendant's Cross–Motion For Summary Judgment is ALLOWED. Accordingly, this case is hereby DISMISSED. The Clerk shall act accordingly. No costs.

**IT IS SO ORDERED.**